UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

In re                                                    :         Chapter 11

PHILIP G. BARRY                                          :         Case No. 08-47352 (DEM)
a/k/a BARRY PUBLICATIONS,
                                                         :
                    Debtor.
------------------------------------------------------------------------ x

MIRIAM GREENBERGER,
                                                         :         Adv. No.
                              Plaintiff,
                                                         :
            - against -
                                                         :
PHILIP G. BARRY
a/k/a BARRY PUBLICATIONS                                 :

                              Defendant.                 :
------------------------------------------------------------------------ x

## COMPLAINT TO DETERMINE
## DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523

   Plaintiff Miriam Greenberger, by her attorneys, Emery Celli Brinckerhoff &

Abady LLP allege as follows:

## JURISDICTION AND VENUE

   1.  On October 31, 2008 (the "Petition Date"), the Debtor[1] filed a voluntary

petition for relief under Chapter 11 of the Title 11 of the United States code (the "Bankruptcy

Code") in the United States Bankruptcy Court for the Eastern District of New York (the

"Bankruptcy Court"), under Case No. 08-47352 (DEM) (the "Individual Bankruptcy Case").

---

[1]  The Debtor in this case appears, *pro se*, as Philip G. Barry a/k/a Barry Publications.  If, in fact, Barry Publications is a legally separate entity existing under the laws of the State of New York, or any other jurisdiction, then to the extent that the Debtor intends Barry Publications to be a debtor in bankruptcy, such pro se representation is not permitted under the laws of this jurisdiction.

2.      On November 20, 2008, Philip Barry LLC, a limited liability company of which the Debtor is the sole member, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court, bearing Case no. 1-08-47899 (DEM) (the "Corporate Bankruptcy Case").  The Corporate Bankruptcy Case was dismissed by this Court on January 21, 2009.

3.      This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §1334, Federal Rules of Bankruptcy Procedure 4004(a), 4007, and 7001(6), and 11 U.S.C. §§ 523 and 105(a).  This adversary proceeding is a core proceeding under 28 U.S.C. § 157(2)(I).

4.      Venue of this adversary proceeding in this judicial district is appropriate pursuant to 28 U.S.C. § 1409(a), as this proceeding arises in or is related to a case arising under Title 11, which is presently venued in this district as set forth above.

## THE PARTIES

**Plaintiff and Defendant**

5.      Plaintiff Miriam Greenberger is an individual who resides in New York, New York.

6.      On information and belief, defendant Philip G. Barry a/k/a Barry Publications is a citizen of the State of New York and resides at 7802 Fourth Avenue, Brooklyn, New York.   The defendant frequently provides 477 - 82nd Street, Brooklyn, New York 11209 as his personal address.

**Non-Defendant Related Parties**

7.      On information and belief, The Leverage Group ("Leverage Group") is a New York entity with its principal place of business at 477 - 82nd Street, Brooklyn, New York 11209.

8.      On information and belief, Leverage Option Management Co., Inc.

("Leverage Option Management") is a New York corporation with its principal place of business

at 477 - 82nd Street, Brooklyn, New York 11209.

9.      On information and belief, Leverage Management LLC ("Leverage

Management") is a New York State limited liability corporation with its principal place of

business at 477 - 82nd Street, Brooklyn, New York 11209.

10.      On information and belief, North American Financial ("North

American") is a New York entity with its principal place of business at 477 - 82nd Street,

Brooklyn, New York 11209.

11.      On information and belief, St. Josephs Development Corporation ("St.

Josephs") is a New York corporation with its principal place of business at 477 - 82nd Street,

Brooklyn, New York 11209.

12.      On information and belief, HK Holdings, LLC ("HK Holdings")  is a New

York State limited liability corporation with its principal place of business at 477 - 82nd Street,

Brooklyn, New York 11209.

13.      On information and belief, Philip Barry LLC ("Barry LLC") is a New

York State limited liability corporation with its principal place of business at 477 - 82nd Street,

Brooklyn, New York 11209.

14.      On information and belief, Barry is a principal, officer, director, or

otherwise holds an interest in the foregoing non-Defendant related parties.  Although these non-

Defendant related parties are Defendant and the Related Entities  in the various District Court

actions, which are described in further detail herein, they are not debtors in this Bankruptcy Case

and are not defendants in this adversary proceeding.  These non-Defendant related parties may

be collectively referred to herein as the "Related Entities."

## PROCEDURAL BACKGROUND – DISTRICT COURT

15.      On October 8, 2008, *Greenberger v. The Leverage Group, et al.,* 08-CV-4123 (CPS)(SMG) was filed in the United States District Court for the Eastern District of New York.

16.      On November 17, 2008 and December 18, 2008, the District Court consolidated the *Greenberger* action with *Monteleone v. Leverage Group*, CV-08-1986 (CPS)(SMG) and other cases, and a consolidated complaint was thereafter filed.

17.      On January 28, 2009, the District Court entered a Memorandum and Order in the *Greenberger* action as well as the consolidated action.  (This Memorandum and Order was amended on January 29, 2009, but those amendments did not affect plaintiff.)

18.      The Memorandum and Order granted Ms. Greenberger's motion for summary judgment against Leverage Group, Leverage Option Management, Leverage Management, LLC, and North American Financial, and awarded plaintiff Miriam Greenberger the sum of $319,895.77, together with costs and post-judgment interest thereon.

19.      Judgment in favor of Miriam Greenberger was entered on January 29, 2009.

## FACTUAL BACKGROUND

20.      In or about October 2001, plaintiff Miriam Greenberger was referred to Philip Barry to invest her money with him and his companies, the Leverage Group, Leverage Option Management, North American Financial, and Philip Barry LLC.

21.      Barry solicited individuals to make investments in Leverage beginning as early as 2001 (when he solicited plaintiff) and, upon information and belief, years earlier.  Since

that time Barry has conducted a continuous, unregistered offering of interests in Leverage.

22.     Barry has stated to plaintiff and other investors that Leverage engaged in the business of trading in options in publicly-traded securities, which enabled Leverage to make a profit regardless of whether the underlying security increased or decreased in value.

23.     Upon information and belief, Leverage is owned and/or operated by Philip Barry.

24.     To induce investors to purchase interests through the offering, defendant and the Related Entities made the following false statements:

    a.  that the firm had one of the most profitable and reliable performance records in the investment management business;

    b.  that Leverage had consistently earned annual returns of at least 12.55% for its investors;

    c.  that investment in Leverage would be the absolute safest place for an investor's money to grow;

    d.  that investments in Leverage would earn a guaranteed minimum annual return of 12.55% for the subsequent year;

    e.  that investors' principal cannot decrease;

    f.  that funds invested in Leverage would be in a separate account for each investor; and

    g.  that investors would be able to liquidate their account upon request.

25.     These statements were made in writing and on the telephone multiple times to plaintiff.  Specifically, when plaintiff first invested money with defendant in October 2001, she was told that the minimum annual yield for that year would be 12.55% and her

principal cannot decrease.  Plaintiff subsequently received annual letters, each of which stated

that the minimum guaranteed yield for the subsequent year would be 12.55%, including one such

letter in December 2002 and another in December 2004.  Barry repeatedly informed Greenberger

that she could liquidate her account, including, most recently in late August 2008 (described

more fully, infra).

        26.     Each of these statements was materially false and misleading. In

particular,

        a.   Investment in Leverage was not a safe investment, but rather was risky

        and speculative;

        b.   Defendant and the Related Entities had no reasonable means for

        backing up the 12.55% annual return that he guaranteed to investors;

        c.   Upon information and belief, Defendant and the Related Entities did

        not maintain segregated accounts for investors; and

        d.   Defendant and the Related Entities did not always permit investors to

        withdraw their money upon request.

        27.     The statements made to plaintiff herein were knowingly false when made.

        28.     In reliance upon defendant's false statements, including those set forth

above, beginning in October of 2001, Greenberger provided a series of personal checks made out

to Leverage Option Management, pursuant to Barry's instructions, for Defendant and the Related

Entities to invest.

        29.     Each year Defendant mailed Greenberger a letter stating that her

investment would have a minimum effective annual yield of 12.55% for the subsequent calendar

year.

30.    Defendant mailed Greenberger Quarterly Statements reflecting that her investment was earning the guaranteed 12.55% effective annual yield and her investment was growing accordingly, as investment gains were reinvested in her account.  The last such quarterly statement Greenberger received was dated June 30, 2008.  That statement indicated that the closing balance in her account was $304,136.52.

31.    Over the course of numerous conversations between February and September of 2008, Barry failed to disclose to plaintiff the existence of multiple lawsuits brought by investors against him and the Related Entities.

32.    During numerous conversations between February and September 2008, in response to Greenberger's questioning about the status of defendant's business and plaintiff's investments, Barry made affirmative and material misrepresentations that the Leverage Group was operating as normal and that plaintiff's investments were safe and growing at 12.55% annually.  At the time Barry made these statements, he knew they were false.

33.    Plaintiff relied on Barry's misstatements to her detriment.  These statements were intended to, and had the effect of, discouraging Greenberger from learning of her potential legal claims and pursuing legal action.

34.    Plaintiff did not learn of the lawsuits by other investors, or, indeed, that defendant faced any difficulty meeting his obligations to investors, until late September 2008.

35.    In late August 2008, Greenberger telephoned Barry in order to close her account.  Barry sought to discourage her from closing her accounts, bullying plaintiff by stating that this would amount to questioning his integrity.  Greenberger insisted that her account be closed.

36.    On August 24, 2008, Barry told plaintiff that he needed 30 days to sell the

options in order to liquidate her account. He promised to return the amount listed on plaintiff's

June 2008 statement, along with additional accumulated interest at 12.55%, by late September

2008.

      37.    In late September 2008, Barry told plaintiff that defendant and the Related

Entities owed her $313,886.50 as of October 6, 2008.

      38.    Defendant and the Related Entities have not returned Greenberger's

account balance of $313,886.50  as Barry had promised.

      39.    Plaintiff has not yet received her September 30, 2008 quarterly statement.

## COUNT I

## VIOLATION OF FEDERAL SECURITIES LAW

      40.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth

herein.

      41.    The options in which Defendant and the Related Entities  traded on

Plaintiff's behalf are a "security" or "securities" within the meaning of Sections 3(a)(10) and

10(b) of the Securities Exchange Act, 15 U.S.C. sections 78c(a)(l0), 78j(b), and S.E.C. Rule

l0b-S.

      42.    Defendant and the Related Entities , directly and indirectly, singly and in

concert, knowingly or recklessly, by use of the means and instrumentality of interstate commerce

or of the mails, in the offer or sale, and in connection with the purchase or sale, of securities,

have inter alia (a) employed devices, schemes, or artifices to defraud; (b) obtained money or

property by means of, or otherwise made untrue statements of material fact, or omitted to state

material facts necessary to make the statements made, in the light of the circumstances under

which they were made, not misleading; and (c) engaged in transactions, acts, practices, and

courses of business which operated as a fraud or deceit upon purchases of securities.

43.     In furtherance of the Securities Fraud, Defendant and the Related Entities have made several misrepresentations, including but not limited to the following:

a.     that Barry was a professional investment manager with a successful track record in managing investments for individuals;

b.     that the firm's successful track record dated back to approximately 1977;

c.     that the firm had one of the best performance records in the investment management business;

d.     that the Defendant and the Related Entities  had consistently earned annual returns of at least 12.55%;

e.     that investments in the Leverage entities would be "safe";

f.     that investments in the Leverage entities would earn a guaranteed minimum annual return of 12.55%;

g.     that interest income would be paid quarterly;

h.     that funds invested in the Leverage Defendant and the Related Entities  would be held in a segregated account for each investor;

i.     that investors would receive quarterly statements evidencing the change in their account over the quarter; and

j.     that investors in the Leverage Defendant and the Related Entities would be able to liquidate their account upon request.

44.     These representations were material, and the Defendant and the Related Entities knew or should have known that the material misrepresentations were false or

misleading.

45.     By reason of the acts, omissions, practices and courses of business set forth in this Complaint, the Defendant and the Related Entities  have violated the Securities laws of the United States, including but not limited to, Sections 3(a)(10) and 10(b) of the Securities Exchange Act, 15 U.S.C. sections 78c(a)(l0), 78j(b), and S.E.C. Rule l0b-S.

46.     Plaintiff reasonably relied on Defendant and the Related Entities ' misrepresentations regarding the Leverage Defendant and the Related Entities in deciding to invest her funds.

47.     As a result of the foregoing, Plaintiff has sustained substantial damages that exceed $500,000 and has been irreparably harmed thereby.

## COUNT II

## VIOLATION OF 18 USC 1962(c)-FEDERAL RICO

48.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

49.     At all times relevant to this complaint Defendant and the Related Entities were "persons" within the meaning of 18 U.S.C. section 1961(3).

50.     At all times relevant to this complaint, the Defendant and Leverage Option Management, North American, Leverage Management, St. Joseph's, and HK Holdings (the "RICO Defendants") directly or indirectly maintained an interest in or participated in the operation of the Leverage Group , which is an "enterprise" within the meaning of 18 U.S.C. section 1961(4).

51.     As set forth more fully above, the foregoing RICO Defendants corrupted the Leverage Group and caused Plaintiff damage through a pattern of racketeering activity.  At

all times relevant to this complaint, the foregoing RICO Defendants conducted or participated, directly or indirectly, in the operation and management of the Leverage Group through a pattern of racketeering activity within the meaning of 18 USC section 1961(1) and (5) and section 1962 (c). This pattern of racketeering activity entailed at least two predicate acts of racketeering activity by the foregoing RICO Defendants.

52.    The aforementioned pattern of racketeering consisted of a multitude of acts that are indictable under 18 USC sections 1341, 1343 and 1346 and are within the scope of 18 USC sections 1961(a)(A) and (1)(B). As set out more fully herein, the commission of at least two of those related predicate acts over the last 10 years constituted a continuous and related pattern of racketeering activity as defined in 18 USC 1961(1) and (5).

53.    As part of and in furtherance of the fraudulent schemes and artifices described aforesaid, the RICO Defendants made repeated use of; or had reason to believe that others would use, the U.S. Postal Service, interstate overnight couriers, and the interstate wires to transmit various documents, including without limitation the Quarterly Statements, contracts, letters and investment-deposit checks ("the Transmissions").

54.    Each transmission constituted either the transmittal by means of wire communication in interstate commerce of signals, sounds or writings; the use of the U.S. Postal service; or the use of interstate overnight couriers for the purpose of executing or in connection with the aforementioned schemes and artifices to defraud. The foregoing RICO Defendants knew or had reason to believe that these transmissions were in furtherance of advancing the aforesaid corrupt enterprise or were incidental to an essential part of the aforesaid corrupt enterprise.

55.    The RICO Defendants made or caused these transmissions to be made

with the specific intent of defrauding Plaintiff and other investors and potential investors in the

Leverage entities.  Each of these Transmissions furthered the aforementioned schemes and

artifices to defraud, which were intended to and did proximately cause injury to Plaintiff and

others in their business and property. Those acts constituted offenses indictable as crimes under,

the "mail fraud" and "wire fraud" statutes, 18 USC sections 1341, 143 and 1346.

56.     Plaintiff reasonably relied upon the oral and written statements made to

her by the foregoing RICO Defendants in connection with the aforementioned schemes or

artifices to defraud.

57.     As a result of the foregoing, Plaintiff has sustained substantial damages

and/or irreparable harm.

## COUNT III

## VIOLATION OF 18 USC SECTION 1962(d)--FEDERAL RICO CONSPIRACY

58.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth

herein.

59.     Since at least 1988 through and including the present, the RICO

Defendants unlawfully and willfully combined, conspired, confederated and agreed between and

among each other to violate 18 USC section 1962(c), i.e. to conduct and participate, directly and

indirectly, in the affairs of the Leverage Group through a pattern of racketeering, all in violation

of 18 USC section 1962(d).

60.     As part of this conspiracy, each of the foregoing RICO Defendants

personally agreed to commit and in fact committed two or more predicate racketeering acts

within the last 10 years and agreed to conduct and in fact conducted the affairs of the Leverage

Group through a pattern of racketeering activity in violation of 18 USC section 1962(c).

61.     As a result of the foregoing, Plaintiff has sustained substantial damages and has been irreparably harmed.

## COUNT IV

## COMMON LAW FRAUD

62.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

63.     Defendant and the Related Entities made numerous false and misleading statements to Plaintiff, both orally and in writing.  These false and misleading statements upon which Defendant's expected Plaintiff to rely, include, but are not limited to the following:

a.      that Barry was a professional investment manager with a successful track record in managing investments for individuals;

b.      that the firm's successful track record dated back to approximately 1977;

c.      that the firm had one of the best performance records in the investment management business;

d.      that the Leverage entities had consistently earned annual returns of at least 12.55% for its investors;

e.      that investments in the Leverage entities would be "safe";

f.      that investments in the Leverage entities would earn a guaranteed minimum annual returns of at least 12.55%;

g.      that interest income would be paid quarterly;

h.      that funds invested in the Leverage Defendant and the Related Entities  would be held in a segregated account for each investor;

     i.      that investors would receive quarterly statements evidencing the change in their account over the quarter; and

     j.      that investors in the Leverage Defendant and the Related Entities would be able to liquidate their account upon request.

64.     Additionally, upon information and belief, Defendant and the Related Entities, fraudulently converted Plaintiff's funds and used them to purchase numerous properties in Sullivan County, New York and other New York locations.

65.     Defendant and the Related Entities acted with the intention to deceive and mislead the Plaintiff, to fraudulently induce her to invest in the Leverage entities and to fraudulently misappropriate and obtain control over the funds that Plaintiff invested with Defendant and the Related Entities.

66.     Defendant and the Related Entities knew at the time they made these false deceptive, and misleading statements and omissions that these statements and omissions were material to Plaintiff.

67.     Plaintiff reasonably relied on Defendant's and the Related Entities' statements regarding the Leverage entities in deciding to invest her funds with Defendant and the Related Entities.

68.     As a result of Defendant's and the Related Entities' fraudulent conduct, Plaintiff has sustained substantial damages and has suffered imminent and irreparable harm.

## COUNT V

## CONVERSION

69.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

70. In the aforesaid contracts and in numerous oral statements, Defendant and the Related Entities agreed that the funds invested by Plaintiff would be held in segregated accounts for her benefit.

71. Without Plaintiff's consent or authority, Defendant and the Related Entities, on information and belief, unlawfully converted property owned by the Plaintiff, consisting of cash and securities in her Leverage entities account. Defendant and the Related Entities converted this property for their own benefit, including but not limited to, on information and belief, to purchase real estate in Sullivan County, New York and/or to pay other investors as described herein.

72. Defendant and the Related Entities converted this property through the aforesaid fraudulent scheme.

73. Plaintiff has demanded the return of the wrongfully converted property, but Defendant and the Related Entities have failed and/or refused to return it.

74. As a result of the conversion, Plaintiff has sustained substantial damages and has suffered imminent and irreparable harm.

<u>**COUNT VI**</u>

<u>**NEGLIGENT MISREPRESENTATION**</u>

75. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

76. At all relevant times, Defendant and the Related Entities owed Plaintiff a duty to provide correct and accurate information.

77. The Defendant and the Related Entities  provided the following incorrect information and/or misrepresentations to Plaintiff:

      a.       that Barry was a professional investment manager with a successful track record in managing investments for individuals;

      b.       that the firm's successful track record dated back to approximately 1977;

      c.       that the firm had one of the "best performance records" in the investment management business;

      d.       that the Leverage entities had consistently earned annual returns of at least 12.55%;

      e.       that investments in the Leverage entities would be "safe";

      f.       that investments in Leverage would earn a guaranteed minimum annual return of 12.55%;

      g.       that interest income would be paid quarterly;

      h.       that funds invested in the Leverage entities would be held in a segregated account for each investor;

      i.       that investors would receive quarterly statements evidencing the change in their account over the quarter; and

      j.       that investors in the Leverage entities would be able to liquidate their account upon request.

78.      Defendant and the Related Entities knew or should have known that the information they were providing to Plaintiff was incorrect.

79.      Plaintiff reasonably relied on the incorrect representations and/or misrepresentations to her detriment when making investment decisions with Defendant and the Related Entities.

80.    As a result of the negligent misrepresentations, Plaintiff has sustained substantial damages and have suffered imminent and/or irreparable harm.

## COUNT VII

## BREACH OF FIDUCIARY DUTY

81.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

82.    By holding themselves out as a securities broker and/or lender, Defendants and the Related Entities owed a fiduciary duty to Plaintiff and to treat her with the utmost good faith and diligence.

83.    Defendant and the Related Entities breached their fiduciary duties to Plaintiff *inter alia* by making the aforesaid material misrepresentations and/or material omissions of fact and by failing to pay Plaintiff the funds due and owing to her upon due demand.

84.    As a result of the breach of fiduciary duty, Plaintiff has and will continue to sustain substantial damages, and has and will continue to suffer imminent and irreparable harm.

## COUNT VIII

## BREACH OF CONTRACT

85.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

86.    The aforesaid agreements between Plaintiff and Defendant and the Related Entities required the Defendant and the Related Entities to pay interest on Plaintiff's principal deposits at an annual rate of at least 12.55%. Defendant and the Related Entities were also required to return Plaintiff's principal and accrued interest upon demand, which Defendant

promised but failed and/or refused to do.

87.    Defendant and the Related Entities have breached their contract with Plaintiff by inter alia failing and/or refusing to return her principal and accrued interest.

88.    As a result of the breach of contract, Plaintiff has and will continue to sustain substantial damages and has and will continue to be imminently and irreparably harmed.

## COUNT IX

## BREACH OF IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING

89.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

90.    Every contract in the State of New York contains the implied covenants of good faith and fair dealing.

91.    Defendant and the Related Entities have breached the implied covenants of good faith and fair dealing contained in their agreement with Plaintiff by inter alia: (1) making material misrepresentations and/or omissions of fact in order to induce Plaintiff to invest with Defendant and the Related Entities; and (2) failing to segregate and then improperly converting Plaintiff's funds for their own use; and (3) failing to return the funds to Plaintiff upon due demand.

92.    As a result of the breach of the implied covenants of good faith and fair dealing, Plaintiff has sustained substantial damages and have suffered imminent and irreparable harm.

## COUNT X

## UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

93.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth

herein.

94.    At all relevant times, Defendant and the Related Entities had a confidential or fiduciary relationship with Plaintiff.

95.    Defendant and the Related Entities agreed to hold Plaintiff's investment deposits in a separate account, pay a guaranteed annual yield, and to return the full amount of the funds held in Plaintiff's account upon due demand.

96.    Plaintiff made investment deposits in the Leverage entities in reliance upon these promises.

97.    Defendant and the Related Entities have been unjustly enriched by obtaining the foregoing investment deposits, enjoying the use of this money for their own benefit, and earning profits thereon.

98.    A constructive trust or equitable lien should be imposed upon all of Defendant and the Related Entities assets in favor of Plaintiff.

99.    As a result of Defendant's and the Related Entities' unjust enrichment, Plaintiff has sustained substantial damages and has been imminently and irreparably harmed.

**WHEREFORE**, Plaintiff demands judgment on Counts I-X against Philip G. Barry a/k/a Barry Publications, as follows:

a.    For compensatory, consequential, and punitive damages in an amount which exceeds five hundred thousand dollars ($500,000.00);

b.    For treble damages and attorney's fees pursuant to all applicable statutes; and

c.    For attorneys' fees, cost of suit, and such other and further relief as the

Court may deem appropriate.

## COUNT XI

## 11 U.S.C. § 523(a)(2)

100.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

101.    Defendant obtained money or other property from Plaintiff through a careful and deliberate Ponzi scheme under the guise of financial planning and investing.

102.    The acts and conduct of Defendant constitute the obtaining of money, property, services, or an extension, renewal, or refinancing of credit from Plaintiff through false pretenses, false representations, or actual fraud, pursuant to 11 U.S.C. § 523(a)(2)(A).

103.    The acts and conduct of Defendant constitute the obtaining of money, property, services, or an extension, renewal, or refinancing of credit from Plaintiff through the use of written statements which were materially false, and which statements concerned the Defendant's or the Related Entities' financial condition, and at the time Defendant made such written statements, Defendant knew or should have known that Plaintiff would reasonably rely upon them, pursuant to 11 U.S.C. § 523(a)(2)(B).

104.    Defendant caused these written statements to be made with the intent to deceive Plaintiff pursuant to 11 U.S.C. § 523(a)(2)(B).

WHEREFORE, Plaintiff demands judgment on Counts XI against Philip G. Barry a/k/a Barry Publications, by entering judgment for the amount of funds and value of assets misappropriated by Defendant, and excepting the Plaintiff's claims against Defendant in the Individual Bankruptcy Case, or such portion thereof as the Court deems just, from discharge, together with attorneys' fees, costs, and such other and further relief as the Court may deem

appropriate.

## COUNT XII

### 11 U.S.C. § 523(a)(4)

105.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

106.    The acts and conduct of Defendant constitute fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny pursuant to 11 U.S.C. § 523(a)(4).

**WHEREFORE**, Plaintiff demands judgment on Count XII against Defendant, Philip G. Barry a/k/a Barry Publications by entering judgment for the amount of funds and value of assets misappropriated by Defendant, and excepting the Plaintiff's claims against Defendant in the Individual Bankruptcy Case, or such portion thereof as the Court deems just, from discharge, together with attorneys' fees, costs, and such other and further relief as the Court may deem appropriate.

## COUNT XIII

### 11 U.S.C. § 523(a)(6)

107.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

108.    The acts and conduct of Defendant constitute willful and malicious injury by the Defendant to the Plaintiff and to the property of the Plaintiff, pursuant to 11 U.S.C. § 523(a)(6).

**WHEREFORE**, Plaintiff demands judgment on Count XIII against Defendant, Philip G. Barry a/k/a Barry Publications by entering judgment for the amount of funds and value of assets misappropriated by Defendant, and excepting the Plaintiff's claims

against Defendant in the Individual Bankruptcy Case, or such portion thereof as the Court deems just, from discharge, together with attorneys' fees, costs, and such other and further relief as the Court may deem appropriate.

## COUNT XIV

### 11 U.S.C. § 523(a)(19)

109.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

110.    The acts and conduct of Defendant constitute violation of Federal securities laws and/or State securities laws, or any regulation or order issued under such Federal securities laws or State securities laws, pursuant to 11 U.S.C. § 523(a)(19)(A).

111.    174. The acts and conduct of Defendant constitute common law fraud, deceit, or manipulation in connection with the purchase or sale of securities, pursuant to 11 U.S.C. § 523(a)(19)(B).

**WHEREFORE**, Plaintiff demands judgment on Count XIV against Defendant, Philip G. Barry a/k/a Barry Publications by entering judgment for the amount of funds and value of assets misappropriated by Defendant, and excepting the Plaintiff's claims against Defendant in the Individual Bankruptcy Case, or such portion thereof as the Court deems just, from discharge, together with attorneys' fees, costs, and such other and further relief as the Court may deem appropriate.


Dated:            New York, New York
                 January 30, 2009

EMERY CELLI BRINCKERHOFF
& ABADY LLP


By:_____/s_____
Matthew D. Brinckerhoff (MB 3552)
Debra L. Greenberger (DG 5159)
Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
Tel: (212) 763-5000
Fax: (212) 763-5001
*Attorneys for Plaintiff*