UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PHILIP G. BARRY<br>a/k/a BARRY PUBLICATIONS,<br><br>DEBTOR | CHAPTER 11<br><br>Case No: 08-47352 (dem)<br><br><br>ADVERSARY NO.: |
| AMADEO DEL MONACO, PIEDAD DELMONACO, MICHELLE DELMONACO, BRANDON DELMONACO, NICOLE DEL MONACO, ROSA ARMETTA, KARAMCHAND BALKARAN, GINO CITRO, STEPHEN DOYLE, KEITH PENNINGTON, JOSEPH FONTANA, MARCO FONTANA, NUNZIO FONTANA, DAVID BREINER, MARC KOWALSKI, GEORGE TRIVINO, GERMAN VALDIVIA, MAXINE ALBERT<br><br>      Plaintiffs,<br><br>vs.<br><br>Philip G. Barry a/k/ Barry Publications<br><br>      Defendant and related entities. | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY
## OF DEBT PURSUANT TO 11 USC Section 523

    Plaintiffs, (collectively the "Del Monaco" creditors) by and through their attorneys Greenbaum

Rowe Smith & Davis LLP, by way of Complaint against Defendant and related entities state as follows:

## JURISDICTION AND VENUE

1.      On October 31, 2008 (the "Petition Date"), the Debtor' filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), under Case No. 08-47352 -dem, (the "Individual Bankruptcy Case").

2.      On November 20, 2008, Philip Barry, LLC, a limited liability company of which the Debtor is the sole member, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court, bearing Case No. 1-08-47899-dem (the "Corporate Bankruptcy Case"). The Corporate Bankruptcy Case was dismissed by the Bankruptcy Court on January 21, 2009.

3.      This Court has jurisdiction of this adversary proceeding pursuant to, inter alia, 28 U.S.C. § 1334, Federal Rules of Bankruptcy Procedure 4004(a), 4007 and 7001(6), and 11 U.S.C. §§ 523 and 105(a). This adversary proceeding is a core proceeding under 28 U.S.C. § 157(2)(1).

4.      Venue of this adversary proceeding in this judicial district is appropriate pursuant to 28 U.S.C. § 1409(a), as this proceeding arises in or is related to a case arising under Title 11, which is presently venued in this district as set forth above

## THE PARTIES

1.      Plaintiff Amedeo Del Monaco is a citizen of the State of New Jersey residing at 121 Ainsworth Avenue, East Brunswick, New Jersey.

2.      Plaintiff Piedad Del Monaco is a citizen of the State of New Jersey residing at 121 Ainsworth Avenue, East Brunswick, New Jersey.  She is the spouse of Plaintiff Amadeo Del Monaco.

3.      Plaintiff Michelle Del Monaco is a citizen of the State of New Jersey residing at 121 Ainsworth Avenue, East Brunswick, New Jersey.

4.      Plaintiff Brandon Del Monaco is a citizen of the State of New Jersey residing at 121 Ainsworth Avenue, East Brunswick, New Jersey.

1078689.01

5.     Plaintiff Nicole Del Monaco is a citizen of the State of New Jersey residing at 121 Ainsworth Avenue, East Brunswick, New Jersey.

6.     Plaintiff Rosa Armetta is a citizen of the State of New York residing at 48 Primrose Lane, Kings Park, New York 11754.

7.     Plaintiff Karamchad Balkaran is a citizen of the State of New Jersey residing at 46 Brunswick Woods Drive, East Brunswick, New Jersey 08816.

8.     Plaintiff Gino Citro is a citizen of the State of New Jersey residing at 10 Henry Street, Teterboro, New Jersey.

9.     Plaintiff Stephen Doyle is a citizen of the State of New Jersey residing at 15 Wood Lake Court, North Brunswick, New Jersey.

10.     Plaintiff Keith Pennington is a citizen of the State of New Jersey residing at 1016 Georges Road, North Brunswick, New Jersey.

11.     Plaintiff Joseph Fontana is a citizen of the State of New Jersey residing at 46 Brunswick Woods Drive, East Brunswick, New Jersey.

12.     Plaintiff Marco Fontana is a citizen of the State of New York residing at 4 Gregory Court, Troy, New York 12180.

13.     Plaintiff Nunzio Fontana is a citizen of the State of New York residing at 431 68th Street, Brooklyn, New York.

14.     Plaintiff David Breiner is a citizen of the State of New York residing at 2 Gregory Court, Troy, New York.

15.     Plaintiff Mark Kowalski is a citizen of the State of New York residing at 12 Pierce Street, Albany, New York.

16.     Plaintiff George Trivino is a citizen of the State of Georgia residing at 2231 Lakeway Drive, Dacula, Georgia 30019.

- 3 -

17.    Plaintiff German Valdavia is a citizen of the State of New York residing at 36 West 56th Street, New York, New York.

18.    Plaintiff Maxine Albert is a citizen of the State of New York residing at 25 West 64th Street, Apt. 1E, New York, New York 11203.

**Non Defendant Related Entities**

19.    Upon information and belief, The Leverage Group is a New York entity with a principal place of business 477 82nd Street, Brooklyn, New York.

20.    Upon information and belief, The Leverage Option Management Co., Inc. is a New York corporation with a principal place of business at 477 82nd Street, Brooklyn, New York.

21.    Upon information and belief, North American Financial is a New York entity with a principal place of business at 477 82nd Street, Brooklyn, New York.

22.    Upon information and belief, Philip Barry, L.L.C. is a New York limited liability company with a place of principal place of business at 477 82nd Street, Brooklyn, New York. Upon information and belief, the sole member of Philip Barry, L.L.C. is Defendant Philip Barry.

**Defendant**

23.    Upon information and belief, Defendant Philip Barry is a citizen of the State of New York residing in Brooklyn, New York.


## FACTS COMMON TO ALL COUNTS

24.    On November 13, 2008, *Del Monaco, et al. v. Philip Barry, et al. 08-cv-4605* was filed in the United States District Court. Other suits followed: *Monteleone, et al. v. Leverage Group, et al.* 08-cv-1986, *Barglow, et al. v. Leverage Group, et al.*, 08-2131, filed May 27, 2008; and *Biano, et al. v. Leverage Group*, et al., 08-3033, filed July 23, 2008.

1078689.01

25.    On November 21, 2008, the District Court consolidated the cases listed above, among others, and instructed Plaintiffs to file a consolidated Complaint.

26.    Plaintiffs bring this action to collectively recover in excess of $25 million dollars lost or stolen by Defendant Philip Barry, a purported investment manager and owner of the Leverage Group and the other entities named herein (hereinafter "Defendant and related entities"). The Plaintiffs seek return of their principal deposits with an annual return of 12.55% for approximately one half of the investment, and 3% per month or 36% per year for approximately one half of the investment which return was promised and recorded in representations made and guarantees by Defendant and related entities.

27.    Over the course of approximately 20 years, Defendant and related entities solicited investments in an option trading enterprise by promising that they would provide a safe investment with consistent guaranteed returns.  Based on Defendant and related entities' written guarantee that the investments would earn a minimum 12.55% annual return, Plaintiffs and other investors invested their hard earned savings in Defendant and related entities' Enterprise.

28.    Contrary, to Defendant and related entities' representations, the Defendant and related entities failed to make all of the promised interest payments, and when various Plaintiffs attempted to withdraw their principal amounts they were told that the funds were not available.

29.    Plaintiffs are victims of an elaborate scheme and fraud perpetrated by Defendant and related entities for Mr. Barry's own personal financial gain, inter alia, to purchase real properties for Mr. Barry in Brooklyn and the State of New York.

30.    In order to induce the Plaintiffs to invest with Defendant and related entities, Defendant Philip Barry and the remaining Defendant and related entities made various false, misleading, deceptive statements and misrepresentations of material facts among other things, to Plaintiffs both in person and/or over the telephone. These include but are not limited to:

- 5 -

a.    that Barry was a professional licensed investment manager with a successful track record in managing investments for individuals;

b.    that the firm's successful track record dated back to approximately 1977;

c.    that the firm had one of the best performance records in the investment management business;

d.    that the Leverage Defendant and related entities had consistently earned annual returns of 12.55% in one fund and 36% in several funds for its investors;

e.    that investment in the Leverage Defendant and related entities would be "safe";

f.    that investments in the Leverage Defendant and related entities would earn a guaranteed minimum annual return of 12.55% or in some instances 36%;

g.    that interest income would be paid quarterly;

h.    that funds invested in the Leverage Defendant and related entities would be held in a segregated account for each investor;

i.    that investors would receive quarterly statements evidencing the change in their account over the quarter; and

j.    that investors in the Leverage Defendant and related entities would be able to liquidate their account upon request.

31.    In fact these statements were materially false and misleading due inter alia to the following:

a.    Barry was not a licensed professional investment manager and, on information and belief, did not have a successful track record in managing investments for individuals;

b.    Without the knowledge or authorization of the Plaintiffs, Defendant and related entities used a significant portion of the money raised from Plaintiffs for

- 6 -

Defendant and related entities' own purposes, such as purchasing real estate, and to pay off other investors;

c.     Investments in the Leverage Defendant and related entities were not safe investments, but rather were quite speculative and risky;

d.     Defendant and related entities had no reasonable means for supporting up the 12.55% annual return that they guaranteed to investors;

e.     Defendant and related entities did not maintain segregated accounts for each investor;

f.     Defendant and related entities did not permit investors to withdraw their money upon request or provide any information about where these monies were invested despite due and repeated demand.

28.     Additionally, upon information and belief, Defendant and related entities fraudulently converted Plaintiffs' funds and among other things, used them to purchase the following properties in Sullivan County, New York or other locations within the State of New York:

a)     Robert Lane, Thompson, New York.  Section 61, Block 1, Lot 34.1;

b)     Price Road, Thompson, New York, Section 61, Block 1, Lot 37;

c)     Hiram Jones Road, Thompson, New York, Section 61, Block 1, Lot 40;

d)     Rose Valley, Road, Thompson, New York, Section 61, Block 1, Lot 25;

e)     Kukas Road, Thompson, New York, Section 61, Block 1, Lot 10.6;

f)     Cold Spring Road, Thompson, New York, Section 61, Block 1, Lot 11;

g)     Cold Spring Road, Thompson, New York, Section 61, Block 1, Lot 19.2;

h)     Cold Spring Road, Thompson, New York,  Section 61, Block 1, Lot 19.3;

i)     Cold Spring Road, Thompson, New York, Section 60, Block 1, Lot 20.1;

j)   Cold Spring Road, Thompson, New York, Section 60, Block 1, Lot 23;

k)   Cold Spring Road, Thompson, New York, Section 49, Block 1, Lot. 14.1;

l)   County Road 101, Forestburgh, New York, Section 3, Block 1, Lot 2.6;

m)   County Road 101, Forestburgh, New York, Section 3, Block 1, Lot 1.9;

n)   County Road 101, Forestburgh, New York, Section 3, Block 1, Lot 2.7;

o)   Forestburgh, New York, Section 6, Block 2, Lot 36.56;

p)   Forestburgh, New York, Section 3, Block 1, Lot 2.9;

q)   Forestburgh, New York, Section 6, Block 2, Lot 36.41;

r)   Brasher, New York, Section 17.004, Block 3, Lot 8;

s)   Thompson, New York, Section 59, Block 1, Lot 26.4;

t)   Thompson, New York, Section 59, Block 1, Lot 32;

u)   Thompson, New  York, Section 59, Block 1, Lot 55.3;

v)   Thompson, New York, Section 59, Block 1, Lot 55.6;

w)   Thompson, New York, Section 62, Block 1, Lot 8;

x)   Thompson, New York, Section 62, Block 1, Lot 10.1;

y)   Thompson, New York, Section 62, Block 1, Lot 13;

z)   Thompson, New York, Section 62, Block 4, Lot 3.1;

aa)   Thompson, New York, Section 59, Block 1, Lot 55.2;

bb)   Thompson, New York, Section 59, Block 1, Lot 55.5;

cc)   Thompson, New York, Section 59, Block 1, Lot 54.1;

dd)   Thompson, New York,  Section 49, Block 1, Lot 7.2;

ee)   Thompson, New York, Section 49, Block 1, Lot 14.1;

ff)   Thompson, New York, Section 49, Block 1, Lot 20.1;

gg)   Cochecton, New York, Section 4, Block 1, Lot 22;

- 8 -

1.    For the 3% per month account, the Estate is owed the following:

|     |           |              |
|-----|-----------|--------------|
| (1) | Principal | $150,000.00  |
| (2) | Interest  | $ 67,500.00  |
|     | Subtotal  | $217,500.00  |

2.    For the 12.55% accounts per year, the Estate is owed the following:

|     |           |             |
|-----|-----------|-------------|
| (a) | Principal | $66,400.00  |
| (b) | Interest  | $10,416.00  |
|     | Subtotal  | $76,816.00  |

The total amount due to the estate is:  $294,316.00

39.    Plaintiff Nunzio Fontana, as of December 31, 2008, is owed the following amount by Defendants which has not been returned by Defendants despite due demand for same:

1.    For the 3% per month account, Nunzio Fontana is owed the following:

|     |           |              |
|-----|-----------|--------------|
| (1) | Principal | $155,301.93  |
| (2) | Interest  | $ 37,272.48  |
|     | Subtotal  | $192,574.41  |

2.    For the 12.55% accounts per year, Nunzio Fontana is owed the following:

|     |           |             |
|-----|-----------|-------------|
| (a) | Principal | $30,000.00  |
| (b) | Interest  | $29,159.82  |
|     | Subtotal  | $59,156.82  |

The total amount due to Nunzio Fontana is: $251,731.23

40.    Plaintiff Marco Fontana, as of December 31, 2008, is owed the following amount by Defendants which has not been returned by Defendants despite due demand for same:

1.    For the 3% per month account, Marco Fontana is owed the following:

|     |           |              |
|-----|-----------|--------------|
| (1) | Principal | $80,000.00   |
| (2) | Interest  | $47,355.82   |
|     | Subtotal  | $127,355.82  |

2.    For the 12.55% accounts per year, Marco Fontana is owed the following:

|     |           |            |
|-----|-----------|------------|
| (a) | Principal | $5,000.00  |
| (b) | Interest  | $ 558.00   |
|     | Subtotal  | $5,558.00  |

The total amount due to Marco Fontana is: <u>$132,913.82</u>

41.    Plaintiff David Breiner, as of December 31, 2008, is owed the following amount by Defendants which has not been returned by Defendants despite due demand for same:

    1.    For the 3% per month account, David Breiner is owed the following:

|     |           |             |
|-----|-----------|-------------|
| (1) | Principal | $40,000.00  |
| (2) | Interest  | <u>$22,318.70</u> |
|     | Subtotal  | $62,318.70  |

    2.    For the 12.55% accounts per year David Breiner is owed the following:

|     |           |             |
|-----|-----------|-------------|
| (a) | Principal | $10,000.00  |
| (b) | Interest  | <u>$ 1,395.00</u> |
|     | Subtotal  | $11,395.00  |

The total amount due to David Breiner is:    <u>$73,713.70</u>

42.    Plaintiff Mark Kowalski, as of December 31, 2008, is owed the following amount by Defendants which has not been returned by Defendants despite due demand for same:

    1.    For the 3% per month account, Mark Kowalski is owed the following:

|     |           |             |
|-----|-----------|-------------|
| (1) | Principal | $50,000.00  |
| (2) | Interest  | <u>$19,173.79</u> |
|     | Subtotal  | $69,173.76  |

    2.    For the 12.55% accounts per year, Mark Kowalski is owed the following:

|     |           |             |
|-----|-----------|-------------|
| (a) | Principal | $20,000.00  |
| (b) | Interest  | <u>$ 2,232.00</u> |
|     | Subtotal  | $22,232.00  |

The total amount due to Mark Kowalski is:    <u>$91,405.36</u>

43.    Plaintiff George Trivino, as of December 31, 2008, is owed the following amount by Defendants which has not been returned by Defendants despite due demand for same:

    For the 3% per month and 12.55% per month accounts, George Trivino is owed the following:

|     |           |             |
|-----|-----------|-------------|
| (1) | Principal | $110,242.82 |

- 12 -

|        | (2)  | Interest | $  65,483.00 |
|--------|------|----------|--------------|
|        |      | TOTAL    | $164,725.82  |

44.     Plaintiff German Valdavia, as of December 31, 2008, is owed the following amount by Defendants which has not been returned by Defendants despite due demand for same:

1.     For the 3% per month and 12.55% accounts, German Valdavia is owed the following:

|        | (1)  | Principal | $102,869.37 |
|--------|------|-----------|-------------|
|        | (2)  | Interest  | $  59,475.00 |
|        |      | TOTAL     | $159,344.37 |

45.     Plaintiff Maxine Albert, as of December 31, 2008, is owed the following amount by Defendants which has not been returned by Defendants despite due demand for same:

1.     For the 12.55% annual account, Maxine Albert is owed the following:

|        | (1)  | Principal | $201,141.98 |
|--------|------|-----------|-------------|
|        | (2)  | Interest  | $  30,157.00 |
|        |      | TOTAL     | $231,298.98 |

46.     As a result of the foregoing, Plaintiffs have sustained substantial damages in excess of $12 million, and have suffered irreparable harm as well.

1078689.01

## COUNT I

### VIOLATION OF FEDERAL SECURITIES LAW

47.   Plaintiffs repeat and reallege the allegations of the foregoing paragraphs as if fully set forth herein.

48.   The options in which Defendant and related entities traded on Plaintiffs' behalf are a "security" or "securities" within the meaning of Sections 3(a)(10) and 10(b) of the Securities Exchange Act, 15 U.S.C. sections 78c(a)(10), 78j(b), and S.E.C. Rule 10b-5.

49.   Defendant and related entities, directly and indirectly, singly and in concert, knowingly or recklessly, by use of the means and instrumentality of interstate commerce or of the mails, in the offer or sale, and in connection with the purchase or sale, of securities, have inter alia (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of, or otherwise made untrue statements of material fact, or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading;   and (c) engaged in transactions, acts, practices, and courses of business which operated as a fraud or deceit upon purchases of securities.

50.   In furtherance of the Securities Fraud, Defendant and related entities have made several misrepresentations, including but not limited to the following:

    a.    that Barry was a professional investment manager with a successful track record in managing investments for individuals;

    b.    that the firm's successful track record dated back to approximately 1977;

    c.    that the firm had one of the best performance records in the investment management business;

    d.    that the Leverage Defendant and related entities had consistently earned annual returns of between 12.55% and 36% for its investors;

e.    that investments in the Leverage Defendant and related entities would be "safe";

f.    that investments in the Leverage Defendant and related entities would earn a guaranteed minimum annual return of 12.55% or in some instances 36%;

g.    that interest income would be paid quarterly;

h.    that funds invested in the Leverage Defendant and related entities would be held in a segregated account for each investor;

i.    that investors would receive quarterly statements evidencing the change in their account over the quarter; and

j.    that investors in the Leverage Defendant and related entities would be able to liquidate their account upon request.

51.    These representations were material, and the Defendant and related entities knew or should have known that the material misrepresentations were false or misleading.

52.    By reason of the acts, omissions, practices and courses of business set forth in this Complaint, the Defendant and related entities have violated the Securities laws of the United States, including but not limited to, Sections 3(a)(10) and 10(b) of the Securities Exchange Act, 15 U.S.C. sections 78c(a)(10), 78j(b), and S.E.C. Rule 10b-5.

53.    Plaintiffs reasonably relied on Defendant and related entities' misrepresentations regarding the Leverage Defendant and related entities in deciding to invest their funds.

54.    As a result of the foregoing, Plaintiffs have sustained substantial damages that exceed $12 million, and have been irreparably harmed thereby.

## COUNT II

### N.J.S.A. 49:3-71---Violation of New Jersey Securities Law

55.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

56.    By reasons of the acts, misrepresentations, omissions and courses of business previously set forth in this Complaint, the Defendant and related entities have violated the Securities Laws of the State of New Jersey as set forth in N.J.S.A. 49:3-71 (New Jersey's adoption of the Uniform Securities Act).

57.    Plaintiff reasonably relied on Defendant and related entities' misrepresentations regarding Leverage in deciding to invest their funds.

58.    As a result of the foregoing Plaintiff have sustained substantial damages and have been irreparably harmed thereby.

## COUNT III

### VIOLATION OF 18 USC 1962(c)--FEDERAL RICO

59.    Plaintiffs reassert and reallege the foregoing allegations as if fully set forth herein.

60.    At all times relevant to this complaint all Defendant and related entities were "persons" within the meaning of 18 U.S.C. section 1961(3).

61.    At all times relevant to this complaint, the foregoing Defendant and related entities directly or indirectly maintained an interest in or participated in the operation of the Leverage Defendant and related entities, which are an "enterprise" within the meaning of 18 U.S.C. section 1961(4).

62.    As set forth more fully above, the foregoing Defendant and related entities corrupted the Leverage Defendant and related entities and enterprise and caused Plaintiffs damage through a pattern of racketeering activity.    At all times relevant to this complaint, the foregoing Defendant and related entities conducted or participated, directly or indirectly, in the operation and management of the Leverage Defendant and related entities through a pattern of racketeering activity within the meaning of

18 USC section 1961(1) and (5) and section 1962 (c). This pattern of racketeering activity entailed at least two predicate acts of racketeering activity by the foregoing Defendant and related entities.

63.    The aforementioned pattern of racketeering consisted of a multitude of acts that are indictable under 18 USC sections 1341, 1343 and 1346 and are within the scope of 18 USC sections 1961(a)(A) and (1)(B). As set out more fully herein, the commission of at least two of those related predicate acts over the last 10 years constituted a continuous and related pattern of racketeering activity as defined in 18 USC 1961(1) and (5).

64.    As part of and in furtherance of the fraudulent schemes and artifices described aforesaid, the Defendant and related entities made repeated use of, or had reason to believe that others would use, the U.S. Postal Service, interstate overnight couriers, and the interstate wires to transmit various documents, including without limitation the Quarterly Statements, contracts, letters and investment-deposit checks.

65.    Each transmission constituted either the transmittal by means of wire communication in interstate commerce of signals, sounds or writings; the use of the U.S. Postal service; or the use of interstate overnight couriers for the purpose of executing or in connection with the aforementioned schemes and artifices to defraud. The foregoing Defendant and related entities knew or had reason to believe that these transmissions were in furtherance of advancing the aforesaid corrupt enterprise or were incidental to an essential part of the aforesaid corrupt enterprise.

66.    The Defendant and related entities made or caused these transmissions to be made with the specific intent of defrauding Plaintiffs and other investors and potential investors in the Leverage Defendant and related entities. Each of these Transmissions furthered the aforementioned schemes and artifices to defraud, which were intended to and did proximately cause injury to Plaintiffs and others in their business and property. Those acts constituted offenses indictable as crimes under, the "mail fraud" and "wire fraud" statutes, 18 USC sections 1341, 143 and 1346.

- 17 -

67.     Plaintiffs reasonably relied upon the oral and written statements made to them by the foregoing Defendant and related entities in connection with the aforementioned schemes or artifices to defraud.

68.     As a result of the foregoing, Plaintiffs have sustained substantial damages and/or irreparable harm.

## COUNT IV

### VIOLATION OF 18 USC SECTION 1962(d)--FEDERAL RICO CONSPIRACY

69.     Plaintiffs repeat and reallege the foregoing allegations as if the same were fully set forth at length herein.

70.     Since at least 1988 through and including the present, Defendant and related entities unlawfully and willfully combined, conspired, confederated and agreed between and among each other to violate 18 USC section 1962(c), i.e. to conduct and participate, directly and indirectly, in the affairs of the Leverage Defendant and related entities through a pattern of racketeering, all in violation of 18 USC section 1962(d).

71.     As part of this conspiracy, each of the foregoing Defendant and related entities personally agreed to commit and in fact committed two or more predicate racketeering acts within the last 10 years and agreed to conduct and in fact conducted the affairs of the Leverage Defendant and related entities through a pattern of racketeering activity in violation of 18 USC section 1962(c).

72.     As a result of the foregoing, Plaintiffs have sustained substantial damages and have been irreparably harmed.

## COUNT V

### N.J.S.A 2C:41-2(c)--NEW JERSEY RICO

73.     Plaintiffs repeat the foregoing allegations as if fully set forth herein.

74.     The Defendant and related entities are persons as defined by N.J.S.A. 2C:41-1(b).

75.     The aforesaid acts of the Defendant and related entities in making fraudulent statements to Plaintiffs in order to induce Plaintiffs to invest with them and then not return Plaintiffs' investments or to pay all applicable interest promised constitutes an enterprise as set forth in N.J.S.A. 2C:41-1.

76.     The Defendant and related entities have engaged in at least two incidents of racketeering conduct one of which occurred after the effective date of the racketeering statute and the last of which has occurred within 10 years of a prior racketeering activity.

77.     The incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, participants or victims or methods of commission or are otherwise, interrelated by distinguishing characteristics are not isolated incidents.

78.     The Defendant and related entities racketeering activity embraces the following crimes which are crimes under the laws of New Jersey or are equivalent crimes under the laws of any other jurisdiction:

      1)    Theft by Deception;

      2)    Fraud in the offering, sale or purchase of securities.

79.     As a result of the foregoing violations of the New Jersey Rico Statute, Plaintiff has sustained substantial damages and imminent and irreparable harm.

## COUNT VI

### N.J.S.A. 2C:41-2(d)--CONSPIRACY TO VIOLATE NEW JERSEY RICO

80.     Plaintiffs repeat the foregoing allegations as if fully set forth herein.

81.     The Defendant and related entities engaged in the aforesaid, corrupt enterprise in order to defraud the Plaintiffs of their rightful investment and earned interest.

- 19 -

82.    The Defendant and related entities conspired to violate N.J.S.A. 2C:41-2(c) by agreeing to conduct or participate in the affairs of the corrupt enterprise and further agreed to commit at least two predicate acts.

83.    As a result of the aforesaid conspiracy, the Plaintiffs have sustained substantial damages and imminent and irreparable harm.

## COUNT VII

## COMMON LAW FRAUD

84.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

85.    Defendant and related entities made numerous false and misleading statements to Plaintiffs, both orally and in writing.   These false and misleading statements upon which Defendant's expected Plaintiffs to rely, include, but are not limited to the following:

a.    that Barry was a professional investment manager with a successful track record in managing investments for individuals;

b.    that the firm's successful track record dated back to approximately 1977;

c.    that the firm had one of the best performance records in the investment management business;

d.    that the Leverage Defendant and related entities had consistently earned annual returns of between 12.55% and 36% for its investors;

e.    that investments in the Leverage Defendant and related entities would be "safe";

f.    that investments in the Leverage Defendant and related entities would earn a guaranteed minimum annual returns of at least 12.55% and in other instances 3% per month or 36% per annum;

g.    that interest income would be paid quarterly;

     h.    that funds invested in the Leverage Defendant and related entities would be held in a segregated account for each investor;

     i.    that investors would receive quarterly statements evidencing the change in their account over the quarter; and

     j.    that investors in the Leverage Defendant and related entities would be able to liquidate their account upon request.

80.    Additionally, upon information and belief, Defendant and related entities, fraudulently converted Plaintiffs' funds and used them to purchase numerous properties in Sullivan County, New York and other New York locations.

81.    Defendant and related entities acted with the intention to deceive and mislead the Plaintiffs, to fraudulently induce them to invest in the Leverage Defendant and related entities, and to fraudulently misappropriate and obtain control over the funds that Plaintiffs invested with Defendant and related entities.

82.    Defendant and related entities knew at the time they made these false deceptive, and misleading statements and omissions that these statements and omissions were material to Plaintiffs.

83.    Plaintiffs reasonably relied on Defendant and related entities' statements regarding the Leverage Defendant and related entities in deciding to invest their funds with Defendant and related entities.

84.    As a result of Defendant and related entities' fraudulent conduct, Plaintiffs have sustained substantial damages and have suffered imminent and irreparable harm.

## COUNT VIII

### CONVERSION

85.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

1078689.01

86.    In the aforesaid contracts and in numerous oral statements, Defendant and related entities agreed that the funds invested by Plaintiffs would be held in segregated accounts for each of Plaintiff's benefit.

87.    Without the consent or authority of any of the Plaintiffs, Defendant and related entities, on information and belief, unlawfully converted property owned by the Plaintiffs, consisting of cash and securities in their respective Leverage Defendant and related entities accounts.  Defendant and related entities converted this property for their own benefit, including but not limited to, on information and belief, to purchase real estate in Sullivan County, New York and/or to pay other investors as described herein.

88.    Defendant and related entities converted this property through the aforesaid fraudulent scheme.

89.    Plaintiffs have demanded the return of the wrongfully converted property, but Defendant and related entities have failed and/or refused to return it.

90.    As a result of the conversion, Plaintiffs have sustained substantial damages and have suffered imminent and irreparable harm.

### COUNT IX

### NEGLIGENT MISREPRESENTATION

91.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

92.    At all relevant times, Defendant and related entities owed Plaintiffs a duty to provide correct and accurate information.

93.    The Defendant and related entities provided the following incorrect information and/or misrepresentations to Plaintiffs:

      a.    that Barry was a professional investment manager with a successful track record in managing investments for individuals;

1078689.01

b.   that the firm's successful track record dated back to approximately 1977;

c.   that the firm had one of the "best performance records" in the investment management business;

d.   that the Leverage Defendant and related entities had consistently earned annual returns of between 12.55% and 36% for its investors;

e.   that investments in the Leverage Defendant and related entities would be "safe";

f.   that investments in Leverage would earn a guaranteed minimum annual return of 12.55% or in some instances 36%;

g.   that interest income would be paid quarterly;

h.   that funds invested in the Leverage Defendant and related entities would be held in a segregated account for each investor;

i.   that investors would receive quarterly statements evidencing the change in their account over the quarter; and

j.   that investors in the Leverage Defendant and related entities would be able to liquidate their account upon request.

94.   The Defendant and related entities knew or should have known that the information they were providing to Plaintiffs was incorrect.

95.   Plaintiffs reasonably relied on the incorrect representations and/or misrepresentations to their detriment when making investment decision with Defendant and related entities.

96.   As a result of the negligent misrepresentations, Plaintiffs have sustained substantial damages and have suffered imminent and/or irreparable harm.

## COUNT X

## BREACH OF FIDUCIARY DUTY

97.   Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

98.    By holding themselves out as a securities broker and/or lender owed a fiduciary duty to Plaintiffs and to treat them with the utmost good faith and diligence.

99.    Defendant and related entities breached their fiduciary duties to Plaintiffs inter alia by making the aforesaid material misrepresentations and/or material omissions of fact and by failing to pay Plaintiffs the funds due and owing to them upon due demand, and in most cases ceasing interest payments on routine and ordinary basis arbitrarily and capriciously as was the case.

100.    As a result of the breach of fiduciary duty, Plaintiffs have and will continue to sustain substantial damages, and have and will continue to suffer imminent and irreparable harm.

## COUNT XI

## BREACH OF CONTRACT

101.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

102.    The aforesaid agreements between Plaintiffs and Defendant and related entities, required the Defendant and related entities to pay interest on Plaintiffs' principal deposits at a annual rate between 12.55% for certain investments, or 36% for other investments. Defendant's were also required to return Plaintiffs' principal upon demand, which Defendant's promised but failed and/or refused to do.

103.    Defendant and related entities have breached their contracts with Plaintiffs by inter alia, failing and/or refusing to return their principal investments and not paying to Plaintiffs all of the required interest.

104.    As a result of the breach of contract, Plaintiffs have and will continue to sustain substantial damages and have and will continue to be imminently and irreparably harmed.

## COUNT XII

## BREACH OF IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING

105.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth at length herein.

1078689.01

106.   Every contract in the State of New Jersey and New York contains the implied covenants of good faith and fair dealing.

107.   Defendant and related entities have breached the implied covenants of good faith and fair dealing contained in their agreements with Plaintiffs by inter alia: (1) making material misrepresentations and/or omissions of fact in order to induce Plaintiffs to invest with Defendant and related entities; and (2) failing to segregate and then improperly converting Plaintiffs' funds for their own use; and (3) failing to return the funds to Plaintiffs upon due demand.

108.   As a result of the breach of the implied covenants of good faith and fair dealing, Plaintiffs have sustained substantial damages and have suffered imminent and irreparable harm.

## COUNT XIII

### UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

109.   Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

110.   At all relevant times, Defendant and related entities had a confidential or fiduciary relationship with Plaintiffs.

111.   Defendant and related entities agreed to hold Plaintiffs' investment deposits in separate accounts, pay a guaranteed annual yield, and to return the full amount of the funds held in Plaintiffs' account upon due demand.

112.   Plaintiffs made investment deposits in the Leverage Defendant and related entities in reliance upon these promises.

113.   Defendant and related entities have been unjustly enriched by obtaining the foregoing investment deposits, enjoying the use of this money for their own benefit, and earning profits thereon.

114.   A constructive trust or equitable lien should be imposed upon all of Defendant and related entities assets in favor of Plaintiffs.

115.    As a result of Defendant and related entities' unjust enrichment, Plaintiffs have sustained substantial damages and have been imminently and irreparably harmed.

**WHEREFORE**, Plaintiffs demand judgment on all Counts against Defendant and related entities as follows:;

a.    For compensatory, consequential, and punitive damages in an amount which exceeds Twenty Two million dollars ($22,000,000.00);

b.    For treble damages and attorney's fees pursuant to all applicable statutes;

c.    For the appointment of a receiver over Defendant and related entities to marshal assets for the benefit of Plaintiffs; imposing a constructive trust or equitable lien on all of Defendant and related entities' assets in favor of Plaintiffs and such other injunctive or equitable relief as the Court deems just and proper; and

d.    For attorneys' fees, cost of suit, and such other and further relief as the Court may deem appropriate.

## COUNT XIV
### (11 U.S.C. § 523(a)(2))

116.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

117.    Defendant obtained money or other property from Plaintiffs through a careful and deliberate Ponzi scheme under the guise of financial planning and investing.

118.    The acts and conduct of Defendant constitute the obtaining of money, property, services, or an extension, renewal, or refinancing of credit from Plaintiffs through false pretenses, false representations, or actual fraud, pursuant to 11 U.S.C. § 523(a)(2)(A).

119.    The acts and conduct of Defendant constitute the obtaining of money, property, services, or an extension, renewal, or refinancing of credit from Plaintiffs through the use of written statements which were materially false, and which statements concerned the Defendant's or the Related

- 26 -

Entities' financial condition, and at the time Defendant made such written statements, Defendant knew or should have known that Plaintiffs would reasonably rely upon them, pursuant to 11 U.S.C. § 523(a)(2)(B).

120.    Defendant caused these written statements to be made with the intent to deceive Plaintiffs pursuant to 11 U.S.C. § 523(a)(2)(B).

**WHEREFORE,** Plaintiffs demand judgment on Count XIV against Defendant, Philip G. Barry a/k/a Barry Publications by entering judgment for the amount of funds and value of assets misappropriated by Defendant, and excepting the Plaintiffs claims against Defendant in the Individual Bankruptcy Case, or such portion thereof as the Court deems just, from discharge, together with attorneys' fees, costs, and such other and further relief as the Court may deem appropriate.

## COUNT XV
### (11 U.S.C. § 523(a)(4))

121.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

122.    The acts and conduct of Defendant constitute fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny pursuant to 11 U.S.C. § 523(a)(4).

**WHEREFORE,** Plaintiffs demand judgment on Count XIV against Defendant, Philip G. Barry a/k/a Barry Publications by entering judgment for the amount of funds and value of assets misappropriated by Defendant, and excepting the Plaintiff s claims against Defendant in the Individual Bankruptcy Case, or such portion thereof as the Court deems just, from discharge, together with attorneys' fees, costs, and such other and further relief as the Court may deem appropriate.

## COUNT XVI
### (11 U.S.C. § 523(a)(6))

123.    Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

1078689.01

124. The acts and conduct of Defendant constitute willful and malicious injury by the Defendant to the Plaintiffs and to the property of the Plaintiffs, pursuant to 11 U.S.C. § 523(a)(6).

**WHEREFORE**, Plaintiffs demand judgment on Count XIV against Defendant, Philip G. Barry a/k/a Barry Publications by entering judgment for the amount of funds and value of assets misappropriated by Defendant, and excepting the Plaintiff s claims against Defendant in the Individual Bankruptcy Case, or such portion thereof as the Court deems just, from discharge, together with attorneys' fees, costs, and such other and further relief as the Court may deem appropriate.

## COUNT XVI
### (11 U.S.C. § 523(a)(19))

125. Plaintiffs repeat and reallege all of the foregoing allegations as if fully set forth herein.

126. The acts and conduct of Defendant constitute violation of Federal securities laws and/or State securities laws, or any regulation or order issued under such Federal securities laws or State securities laws, pursuant to 1 I U.S.C. § 523(a)(1 9)(A).

127. The acts and conduct of Defendant constitute common law fraud, deceit, or manipulation in connection with the purchase or sale of securities, pursuant to I I U.S.C. § 523(a)(19)(B).

**WHEREFORE**, Plaintiffs demand judgment on Count XIV against Defendant, Philip G. Barry a/k/a Barry Publications by entering judgment for the amount of funds and value of assets misappropriated by Defendant, and excepting the Plaintiff's claims against Defendant in the Individual Bankruptcy Case, or such portion thereof as the Court deems just, from discharge, together with attorneys' fees, costs, and such other and further relief as the Court may deem appropriate.

**GREENBAUM ROWE SMITH & DAVIS LLP**
Attorneys for Plaintiffs

1078689.01

BY: _____
ALAN S. PRALGEVER, ESQ.

DATED: January 30, 2009

1078689.01