UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                             :

In re                             :

                             :

PHILIP G. BARRY a/k/a BARRY   :  Chapter 11
PUBLICATIONS                  :

                             :

            Debtor.         :  Case No.: 08-47352 (DEM)

-------------------------------------------------------------x  :

GRACE SCODARI,             :

                             :

           Plaintiff,     :  Adv. No.

                             :

v.                           :

                             :

PHILIP G. BARRY a/k/a BARRY   :
PUBLICATIONS                  :

                             :

           Defendant.    :

                             :

-------------------------------------------------------------x

## COMPLAINT TO DETERMINE
## DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523

Plaintiff Grace Scodari, by her attorneys, Arent Fox LLP allege as follows:

### JURISDICTION AND VENUE

1.      On October 31, 2008 (the "Petition Date"), Philip G. Barry a/k/a Barry

Publications (the "Debtor" or "Barry") the Debtor[1] filed a voluntary petition for relief under

Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States

Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), under Case

No. 08-47352 (DEM) (the "Individual Bankruptcy Case ).

---

[1]   The Debtor in this case appears, *pro se*, as Philip G. Barry a/k/a Barry Publications.  If, in fact, Barry
Publications is a legally separate entity existing under the laws of the State of New York, or any other jurisdiction,
then to the extent that the Debtor intends Barry Publications to be a debtor in bankruptcy, such *pro se* representation
is not permitted under the laws of this jurisdiction.

2.      On November 20, 2008, Philip Barry LLC, a limited liability company of which the Debtor is the sole member, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court, bearing Case no. 08-47899 (DEM) (the "Corporate Bankruptcy Case").  The Corporate Bankruptcy Case was dismissed by this Court on January 21, 2009.

3.      Upon Motion of the Office of the United States Trustee (the "UST") and by Order dated January 28, 2009, this Court directed the appointment of a Chapter 11 Trustee.

4.      By Notice of Appointment, on January 28, 2009, the UST appointed Alan Nisselson Chapter 11 Trustee of the Debtor's estate pursuant to Bankruptcy Code §1104.

5.      Jurisdiction of this adversary proceeding is proper pursuant to 28 U.S.C. §1334, Federal Rules of Bankruptcy Procedure 4004(a), 4007, and 7001(6), and 11 U.S.C. §§ 523 and 105(a).  This adversary proceeding is a core proceeding under 28 U.S.C. § 157(2)(I).

6.      Venue of this adversary proceeding in this judicial district is appropriate pursuant to 28 U.S.C. § 1409(a), as this proceeding arises in or is related to a case arising under Title 11, which is presently venued in this district as set forth above.

**THE PARTIES**

7.      Plaintiff, Grace Scodari ("Scodari"), is an individual who is a New Jersey citizen and resides at 86 Rymon Road, Washington, New Jersey 07882.

8.      Upon information and belief, defendant Philip G. Barry a/k/a Barry Publications is a citizen of the State of New York and resides at 7802 Fourth Avenue, Brooklyn, New York. The defendant frequently provides 477 - 82nd Street, Brooklyn, New York 11209 as his personal address.

**Non-Defendant Related Parties**

9.      Upon information and belief, The Leverage Group ("Leverage Group") is a New York entity with its principal place of business at 477 - 82nd Street, Brooklyn, New York 11209.

2

10.    Upon information and belief, Leverage Option Management Co., Inc. ("Leverage Option Management") is a New York corporation with its principal place of business at 477 - 82nd Street, Brooklyn, New York 11209.

11.    Upon information and belief, Leverage Management LLC ("Leverage Management") is a New York State limited liability corporation with its principal place of business at 477 - 82nd Street, Brooklyn, New York 11209.

12.    Upon information and belief, North American Financial ("North American") is a New York entity with its principal place of business at 477 - 82nd Street, Brooklyn, New York 11209.

13.    Upon information and belief, St. Josephs Development Corporation ("St. Josephs") is a New York corporation with its principal place of business at 477 - 82nd Street, Brooklyn, New York 11209.

14.    Upon information and belief, HK Holdings, LLC ("HK Holdings") is a New York State limited liability corporation with its principal place of business at 477 - 82nd Street, Brooklyn, New York 11209.

15.    Upon information and belief, Philip Barry LLC ("Barry LLC") is a New York State limited liability corporation with its principal place of business at 477 - 82nd Street, Brooklyn, New York 11209.

16.    Upon information and belief, Barry is a principal, officer, director, or otherwise holds an interest in the foregoing non-Defendant related parties.  Although these non-Defendant related parties are Defendants and the Related Entities in the various District Court actions, which are described in further detail herein, they are not debtors in this Bankruptcy Case and are

not defendants in this adversary proceeding.  These non-Defendant related parties may be collectively referred to herein as the "Related Entities."

## PROCEDURAL BACKGROUND—DISTRICT COURT

17.     On October 8, 2008, *Scodari v. The Leverage Group, et al.,* 08-CV-00559(RRM) (SMG) was filed in the United States District Court for the Eastern District of New York.  A true and correct copy of the Complaint is attached hereto as <u>Exhibit A</u>.

18.     On July 16, 2008, a Consent Judgment was entered in favor of Scodari and against all Defendants including the Debtor herein.  A true and correct copy of the Consent Judgment is attached hereto as <u>Exhibit B</u>.

## FACTUAL BACKGROUND

19.     In or about 1993, Scodari, a 64-year-old planning to retire, was referred to Philip Barry to invest her money with him and his companies, the Leverage Group, Leverage Option Management, North American, and Barry, LLC.

20.     Barry represented that in return for Scodari's investment, she would receive interest payments.  Scodari received 18% interest the first year and 12.55% interest on her investment thereafter.  In addition, Barry provided Scodari quarterly statements regarding her investment as well as quarterly interest payments.

21.     Scodari opened her first account with the Leverage Group (account number 10-221-93) jointly with her husband in 1993 by making a deposit of $15,000.00.

22.     On December 31, 1999, Scordari opened another account, in her name only, with Barry (account number 10-041-99), with an opening deposit of $27,750.00.  Quarterly Statement for account 10-041-99 ending December 31, 1999, is attached as <u>Exhibit C</u>.

23.     With additional deposits and interest, the joint account contained $203,135.24 by the quarterly statement ending March 31, 2004.  Quarterly Statement for account 1-221-93 ending March 31, 2004, is attached as <u>Exhibit D</u>.

24.     According to her quarterly statement from the Leverage Group, as of March 31, 2004, Scodari's individual account (10-041-99) contained $79,788.14.  Quarterly Statement for account 10-041-99 ending March 31, 2004, is attached as <u>Exhibit E</u>.  On or about May 25, 2004, Scodari sent a letter to Barry and requested that the balance from the joint account (10-221-93) be transferred into her individual account (10-041-99).

25.     On or about June 28, 2004, Scodari made an additional deposit of $50,000.00 from her late husband's life insurance policy to be applied to her individual account (10-041-99).  After combining the $203,135.24 from the joint account into the individual account which had a balance of $79,788.14, and adding an additional $50,000.00 deposit plus accrued interest, the balance on Scodari's account on the quarterly statement ending September 30, 2004 was $343,542.86.  Quarterly Statement for account 10-041-99 ending September 30, 2004, is attached as <u>Exhibit F</u>.

26.     After deposits, withdrawals, and interest, the balance on the quarterly statement ending June 30, 2007 was $330,242.75.  Quarterly Statement for account 10-041-99 ending June 30, 2007, is attached as <u>Exhibit G</u>.

27.     Scodari attempted to deposit her quarterly interest check from Barry dated June 22, 2007 in the amount of $3,027.28.  The check was returned for insufficient funds.  Notice from PNC Bank dated June 27, 2007, regarding the $3,027.28 check returned unpaid is attached as <u>Exhibit H</u>.

28.     Barry provided Scodari with three separate checks dated August 6, 2007, August 7, 2007, and August 8, 2007.  He informed her that she should deposit these checks over time. Barry has provided no further checks to Scodari.

29.     On August 16, 2007, Scodari attempted to deposit a check from Barry dated August 7, 2007, in the amount of $2,000.00.  Scodari received a notice from the bank stating that the check has been returned unpaid.  Notice from PNC Bank dated August 21, 2007, regarding the $2,000 check returned unpaid is attached as <u>Exhibit I</u>.

30.     On August 22, 2007, Scodari attempted to deposit a check from Barry dated August 6, 20007 in the amount of $1,907.28.  The check was returned unpaid.  Notice from PNC Bank dated August 27, 2007, regarding the $1,907.28 check returned unpaid is attached as <u>Exhibit J</u>.

31.     Finally, on September 5, 2007, Scodari attempted to deposit a check from Barry dated August 8, 2007, in the amount of $2,400.00.  The check was returned unpaid.  Notice from PNC Bank dated September 10, 2007, regarding the $2,400.00 check returned unpaid is attached as <u>Exhibit K</u>.

32.     After multiple checks were returned unpaid and Barry failed to provide Scodari with her quarterly statement at the end of September, Scodari's attorney sent a letter to Barry requesting the return of all Scodari's funds.  Letter dated October 31, 2007, from John P. Quirke, Esq. to Barry is attached as <u>Exhibit L</u>.

33.     On November 12, 2007, Barry left a voicemail with Scodari's counsel stating that he would send an email regarding the situation, which would be received the following week. No further communication from Barry was received by Scodari's counsel.

34.     In December 2007, Barry contacted Scodari and informed her that he would send her an additional check.  Scodari has never received this check.

35.     Barry has failed to return the balance of Scodari's account, which as of the last provided statement was $330,242.75 plus interest thereon.

## COUNT I

## VIOLATION OF FEDERAL SECURITIES LAW

36.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

37.     The options in which Barry and the Related Entities traded on Plaintiff's behalf are a "security" or "securities" within the meaning of Sections 3(a)(10) and 10(b) of the Securities Exchange Act, 15 U.S.C. §§ 78c(a)(10), 78j(b), and S.E.C. Rule l0b-S.

38.     Barry and the Related Entities, directly and indirectly, singly and in concert, knowingly or recklessly, by use of the means and instrumentality of interstate commerce or of the mails, in the offer or sale, and in connection with the purchase or sale of securities, have, *inter alia*, (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of, or otherwise made, untrue statements of material fact, or omitted material facts necessary to make the statements made not misleading, in the light of the circumstances under which they were made; and (c) engaged in transactions, acts, practices, and courses of business which operated as a fraud or deceit upon purchases of securities.

39.     In furtherance of the Securities Fraud, Barry and the Related Entities have made several misrepresentations, including but not limited to the following:

a.      that Barry was a professional investment manager with a successful track record in managing investments for individuals;

b.      that the firm's successful track record dated back to approximately 1977;

      c.       that the firm had one of the "best performance records in the investment management business";

      d.       that Barry and the Related Entities had consistently earned annual returns of at least 12.55%;

      e.       that investments in the Leverage entities would be "safe";

      f.       that investments in the Leverage entities would earn a guaranteed minimum annual return of 12.55%;

      g.       that interest income would be paid quarterly;

      h.       that funds invested in the Leverage Defendant and the Related Entities would be held in a segregated account for each investor;

      i.       that investors would receive quarterly statements evidencing the change in their account over the quarter; and

      j.       that investors in the Leverage Defendant and the Related Entities would be able to liquidate their account upon request.

40. These representations were material, and the Barry and the Related Entities knew or should have known that the material misrepresentations were false or misleading.

41. By reason of the acts, omissions, practices, and courses of business set forth in this Complaint, Barry and the Related Entities have violated the Securities laws of the United States, including but not limited to, Sections 3(a)(10) and 10(b) of the Securities Exchange Act, 15 U.S.C. §§ 78c(a)(10), 78j(b), and S.E.C. Rule l0b-S.

42. Plaintiff reasonably relied on Barry and the Related Entities misrepresentations regarding the Leverage Defendant and the Related Entities in deciding to invest her funds.

43.     As a result of the foregoing, Plaintiff has sustained substantial damages that exceed $500,000 and has been irreparably harmed thereby.

## COUNT II

## VIOLATION OF 18 U.S.C. § 1962(C)—FEDERAL RICO

44.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

45.     At all times relevant to this Complaint, Barry and the Related Entities were "persons" within the meaning of 18 U.S.C. § 1961(3).

46.     At all times relevant to this complaint, Barry and Leverage Option Management, North American, Leverage Management, St. Joseph's, and HK Holdings (the "RICO Defendants") directly or indirectly maintained an interest in or participated in the operation of the Leverage Group, which is an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

47.     As set forth more fully above, the RICO Defendants corrupted the Leverage Group and caused Plaintiff damage through a pattern of racketeering activity. At all times relevant to this complaint, the RICO Defendants conducted or participated, directly or indirectly, in the operation and management of the Leverage Group through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and (5), and 1962(c). This pattern of racketeering activity entailed at least two predicate acts of racketeering activity by the RICO Defendants.

48.     The aforementioned pattern of racketeering consisted of a multitude of acts that are indictable under 18 U.S.C. §§ 1341, 1343 and 1346 and are within the scope of 18 U.S.C. §§ 1961(a)(A) and (1)(B). As set out more fully herein, the commission of at least two of those related predicate acts over the last 10 years constituted a continuous and related pattern of racketeering activity as defined in 18 U.S.C. §§ 1961(1) and (5).

49.     As part of and in furtherance of the fraudulent schemes and artifices described aforesaid, the RICO Defendants made repeated use of, or had reason to believe that others would

use, the U.S. Postal Service, interstate overnight couriers, and the interstate wires to transmit various documents, including without limitation the Quarterly Statements, contracts, letters, and investment-deposit checks ("the Transmissions").

50.    Each transmission constituted either the transmittal by means of wire communication in interstate commerce of signals, sounds, or writings; the use of the U.S. Postal service; or the use of interstate overnight couriers for the purpose of executing or in connection with the aforementioned schemes and artifices to defraud.  The RICO Defendants knew or had reason to believe that these transmissions were in furtherance of advancing the aforesaid corrupt enterprise or were incidental to an essential part of the aforesaid corrupt enterprise.

51.    The RICO Defendants made or caused these transmissions to be made with the specific intent of defrauding Plaintiff and other investors and potential investors in the Leverage entities.  Each of these Transmissions furthered the aforementioned schemes and artifices to defraud, which were intended to and did proximately cause injury to Plaintiff and others in their business and property.  Those acts constituted offenses indictable as crimes under, the "mail fraud" and "wire fraud" statutes, 18 U.S.C. §§ 1341, 1343 and 1346.

52.    Plaintiff reasonably relied upon the oral and written statements made to her by the foregoing RICO Defendants in connection with the aforementioned schemes or artifices to defraud.

53.    As a result of the foregoing, Plaintiff has sustained substantial damages and/or irreparable harm.

## COUNT III

## VIOLATION OF 18 U.S.C. § 1962(D)—FEDERAL RICO CONSPIRACY

54.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

55.     Since at least 1988 through and including the present, the RICO Defendants unlawfully and willfully combined, conspired, confederated, and agreed between and among each other to violate 18 U.S.C. § 1962(c), i.e. to conduct and participate, directly and indirectly, in the affairs of the Leverage Group through a pattern of racketeering, all in violation of 18 U.S.C. § 1962(d).

56.     As part of this conspiracy, each of the RICO Defendants personally agreed to commit and in fact committed two or more predicate racketeering acts within the last 10 years and agreed to conduct and in fact conducted the affairs of the Leverage Group through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

57.     As a result of the foregoing, Plaintiff has sustained substantial damages and has been irreparably harmed.

## COUNT IV

## COMMON LAW FRAUD

58.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

59.     Barry and the Related Entities made numerous false and misleading statements to Plaintiff, both orally and in writing.  These false and misleading statements upon which Defendant's expected Plaintiff to rely, include, but are not limited to the following:

  a.     that Barry was a professional investment manager with a successful track record in managing investments for individuals;

  b.     that the firm's successful track record dated back to approximately 1977;

  c.     that the firm had one of the "best performance records in the investment management business";

  d.     that the Leverage entities had consistently earned annual returns of at least 12.55% for its investors;

e.      that investments in the Leverage entities would be "safe";

f.      that investments in the Leverage entities would earn a guaranteed

minimum annual returns of at least 12.55%;

g.      that interest income would be paid quarterly;

h.      that funds invested in the Leverage Defendant and the Related Entities

would be held in a segregated account for each investor;

i.      that investors would receive quarterly statements evidencing the change in

their account over the quarter; and

j.      that investors in the Leverage Defendant and the Related Entities would be

able to liquidate their account upon request.

60.     Additionally, upon information and belief, Barry and the Related Entities, fraudulently converted Plaintiff's funds and used them to purchase numerous properties in Sullivan County, New York, and other New York locations.

61.     Barry and the Related Entities acted with the intention to deceive and mislead the Plaintiff, to fraudulently induce her to invest in the Leverage entities, and to fraudulently misappropriate and obtain control over the funds that Plaintiff invested with the Defendant and the Related Entities.

62.     Barry and the Related Entities knew at the time they made these false, deceptive, and misleading statements and omissions that these statements and omissions were material to Plaintiff.

63.     Plaintiff reasonably relied on Barry's and the Related Entities' statements regarding the Leverage entities in deciding to invest her funds with Barry and the Related Entities.

64.     As a result of Barry's and the Related Entities' fraudulent conduct, Plaintiff has sustained substantial damages and has suffered imminent and irreparable harm.

## COUNT V

## CONVERSION

65.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

66.     In the aforesaid contracts and in numerous oral statements, Barry and the Related Entities agreed that the funds invested by Plaintiff would be held in segregated accounts for her benefit.

67.     Without Plaintiff's consent or authority, Barry and the Related Entities, on information and belief, unlawfully converted property owned by the Plaintiff, consisting of cash and securities in her Leverage entities account.  Barry and the Related Entities converted this property for their own benefit, including but not limited to, on information and belief, to purchase real estate in Sullivan County, New York and/or to pay other investors as described herein.

68.     Barry and the Related Entities converted this property through the aforesaid fraudulent scheme.

69.     Plaintiff has demanded the return of the wrongfully converted property, but Defendant and the Related Entities have failed and/or refused to return it.

70.     As a result of the conversion, Plaintiff has sustained substantial damages and has suffered imminent and irreparable harm.

## COUNT VI

## NEGLIGENT MISREPRESENTATION

71.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

72.    At all relevant times, Barry and the Related Entities owed Plaintiff a duty to provide correct and accurate information.

73.    Barry and the Related Entities provided the following incorrect information and/or misrepresentations to Plaintiff:

a.    that Barry was a professional investment manager with a successful track record in managing investments for individuals;

b.    that the firm's successful track record dated back to approximately 1977;

c.    that the firm had one of the "best performance records in the investment management business";

d.    that the Leverage entities had consistently earned annual returns of at least 12.55%;

e.    that investments in the Leverage entities would be "safe";

f.    that investments in Leverage would earn a guaranteed minimum annual return of 12.55%;

g.    that interest income would be paid quarterly;

h.    that funds invested in the Leverage entities would be held in a segregated account for each investor;

i.    that investors would receive quarterly statements evidencing the change in their account over the quarter; and

j.    that investors in the Leverage entities would be able to liquidate their account upon request.

74.    Barry and the Related Entities knew or should have known that the information they were providing to Plaintiff was incorrect.

75.     Plaintiff reasonably relied on the incorrect representations and/or misrepresentations to her detriment when making investment decisions with Barry and the Related Entities.

76.     As a result of the negligent misrepresentations, the Plaintiff has sustained substantial damages and has suffered imminent and/or irreparable harm.

## COUNT VII

## BREACH OF FIDUCIARY DUTY

77.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

78.     By holding themselves out as securities brokers and/or lenders, Barry and the Related Entities owed a fiduciary duty to Plaintiff and to treat her with the utmost good faith and diligence.

79.     Barry and the Related Entities breached their fiduciary duties to Plaintiff, *inter alia*, by making the aforesaid material misrepresentations and/or material omissions of fact, and by failing to pay Plaintiff the funds due and owing to her upon due demand.

80.     As a result of the breach of fiduciary duty, Plaintiff has and will continue to sustain substantial damages, and has and will continue to suffer imminent and irreparable harm.

## COUNT VIII

## BREACH OF CONTRACT

81.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

82.     The aforesaid agreements between Plaintiff and Barry and the Related Entities required the Barry and the Related Entities to pay interest on Plaintiff's principal deposits at an annual rate of at least 12.55%.  Barry and the Related Entities were also required to return Plaintiff's principal and accrued interest upon demand, which Barry promised but failed and/or refused to do.

83.     Barry and the Related Entities have breached their contract with the Plaintiff by, *inter alia*, failing and/or refusing to return her principal and accrued interest.

84.     As a result of the breach of contract, Plaintiff has and will continue to sustain substantial damages, and has and will continue to be imminently and irreparably harmed.

**COUNT IX**

**BREACH OF IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING**

85.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

86.     Every contract in the State of New York contains the implied covenants of good faith and fair dealing.

87.     Barry and the Related Entities have breached the covenants of good faith and fair dealing contained in their agreement with Plaintiff by, *inter alia*: (1) making material misrepresentations and/or omissions of fact in order to induce Plaintiff to invest with Barry and the Related Entities; (2) failing to segregate and improperly converting Plaintiff's funds for their own use; and (3) failing to return the funds to the Plaintiff upon due demand.

88.     As a result of the breach of the implied covenants of good faith and fair dealing, the Plaintiff has sustained substantial damages and has suffered imminent and irreparable harm.

**COUNT X**

**UNJUST ENRICHMENT/CONSTRUCTIVE TRUST**

89.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

90.     At all relevant times, Barry and the Related Entities had a confidential or fiduciary relationship with Plaintiff.

91.     Barry and the Related Entities agreed to hold Plaintiff's investment deposits in a separate account, pay a guaranteed annual yield, and to return the full amount of the funds held in Plaintiff's account upon due demand.

16

92.     Plaintiff made investment deposits in the Leverage entities in reliance upon these promises.

93.     Barry and the Related Entities have been unjustly enriched by obtaining the foregoing investment deposits, enjoying the use of this money for their own benefit, and earning profits thereon.

94.     A constructive trust or equitable lien should be imposed upon Barry's and the Related Entities' assets in favor of Plaintiff.

95.     As a result of Barry's and the Related Entities' unjust enrichment, the Plaintiff has sustained substantial damages and has been imminently and irreparably harmed.

WHEREFORE, Plaintiff demands judgment on Counts I–X against Philip G. Barry a/k/a Barry Publications, as follows:

   a.     For compensatory, consequential, and punitive damages in an amount of three hundred sixty-eight thousand, two hundred twelve dollars and eighty-two cents ($368,212.82);

   b.     For treble damages and attorney's fees pursuant to all applicable statutes; and

   c.     For attorneys' fees, cost of suit, and such other and further relief as the Court may deem appropriate.

## COUNT XI

## 11 U.S.C. & 523(A)(2)

96.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

97.     Barry obtained money or other property from Plaintiff through a careful and deliberate Ponzi scheme under the guise of financial planning and investing.

98.    The acts and conduct of Barry constitute the obtaining of money, property, services, or an extension, renewal, or refinancing of credit from Plaintiff through false pretenses, false representations, or actual fraud, pursuant to 11 U.S.C. § 523(a)(2)(A).

99.    The acts and conduct of Barry constitute the obtaining of money, property, services, or an extension, renewal, or refinancing of credit from Plaintiff through the use of written statements which were materially false, and which statements concerned Barry's or the Related Entities' financial condition, and at the time Barry made such written statements, Barry knew or should have known the Plaintiff would reasonably rely upon them, pursuant to 11 U.S.C. § 523(a)(2)(B).

100.    Barry caused these written statements to be made with the intent to deceive Plaintiff pursuant to 11 U.S.C. § 523(a)(2)(B).

WHEREFORE, Plaintiff demands judgment on Count XI against Philip G. Barry a/k/a Barry Publications, by entering judgment for the amount of funds and value of assets misappropriated by Barry, and excepting the Plaintiff's claims against Barry in the Individual Bankruptcy Case, or such portion thereof as the Court deems just, from discharge, together with attorneys' fees, costs, and such other and further relief as the Court may deem appropriate.

## COUNT XII

## 11 U.S.C. & 523(A)(4)

101.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

102.    The acts and conduct of Barry constitute fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, Plaintiff demands judgment on Count XII against Defendant, Philip G. Barry a/k/a Barry Publications by entering judgment for the amount of funds and value of assets misappropriated by Barry, and excepting the Plaintiff's claims against Barry in the Individual

Bankruptcy Case, or such portion thereof as the Court deems just, from discharge, together with attorneys' fees, costs, and such other and further relief as the Court may deem appropriate.

## COUNT XIII

## 11 U.S.C. & 523(A)(6)

103.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

104.    The acts and conduct of Barry constitute willful and malicious injury by Barry to the Plaintiff, and to the property of the Plaintiff, pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, Plaintiff demands judgment on Count XIII against Defendant, Philip G. Barry a/k/a Barry Publications by entering judgment for the amount of funds and value of assets misappropriated by Barry, and excepting the Plaintiff's claims against Barry in the Individual Bankruptcy Case, or such portion thereof as the Court deems just, from discharge, together with attorneys' fees, costs, and such other and further relief as the Court may deem appropriate.

## COUNT XIV

## 11 U.S.C. & 523(A)(19)

105.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

106.    The acts and conduct of Barry constitutes violation of federal Securities laws and/or state Securities laws, or any regulation or order issued under such federal Securities laws or state Securities laws, pursuant to 11 U.S.C. § 523(a)(19)(A).

107.    The acts and conduct of Barry constitute common law fraud, deceit, or manipulation in connection with the purchase or sale of securities, pursuant to 11 U.S.C. § 523(a)(19)(B).

WHEREFORE, Plaintiff demands judgment on Count XIV against Defendant, Philip G. Barry a/k/a Barry Publications by entering judgment for the amount of funds and value of assets misappropriated by Barry, and excepting the Plaintiff's claims against Barry in the Individual

Bankruptcy Case, or such portion thereof as the Court deems just, from discharge, together with

attorneys' fees, costs, and such other and further relief as the Court may deem appropriate.

Dated: New York, New York
      March 16, 2009

**ARENT FOX LLP**

By:    */s/ Robert M. Hirsh*
       Robert M. Hirsh (RH-5499)
       1675 Broadway
       New York, New York 10019
       (212) 484-3900
       ***Attorneys for Plaintiff, Grace Scodari***