Jonathan Matthew Borg (JB-9487)
DAY PITNEY LLP
7 Times Square
New York, NY 10036
Telephone:    (212) 297-5800
Facsimile:    (212) 916-2940
Email:  jborg@daypitney.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

**In re:**                                                                          Case No.  08-47352 (dem)

**PHILIP G. BARRY**                                                      Chapter 11
**a/k/a BARRY PUBLICATIONS,**

                                                          **Debtor.**
-------------------------------------------------------------x
**MICHAEL VINCENT MILLER and**
**CASSITY BLAKE MILLER,**

                                          **Plaintiffs,**

                    -against-

**PHILIP G. Barry**
**a/k/a BARRY PUBLICATIONS,**

                                          **Defendant.**
-------------------------------------------------------------x

### COMPLAINT TO DETERMINE DISCHARGEABILITY
### OF DEBT PURSUANT TO 11 U.S.C. § 523

    Plaintiffs Michael Vincent Miller and Cassity Blake Miller (collectively, "Plaintiffs"),

through their attorneys, DAY PITNEY LLP, and as and for their Complaint against defendant

Debtor Philip G. Barry a/k/a Barry Publications ("Debtor"), allege as follows:

## JURISDICTION AND VENUE

1.        On October 31, 2008 (the "Petition Date"), the Debtor[1] filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), under Case No. 08-47352-dem (the "Individual Bankruptcy Case").

2.        On November 20, 2008, Philip Barry, LLC, a limited liability company of which the Debtor is the sole member, filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code with the Bankruptcy Court, bearing Case No.  1-08-47899-dem (the "Corporate Bankruptcy Case").  The Corporate Bankruptcy Case was dismissed by this Court on January 21, 2009.

3.        Upon Motion of the Office of the United States Trustee (the "US Trustee") and by Order dated January 28, 2009, this Court directed the appointment of a Chapter 11 Trustee.

4.        By Notice of Appointment, on January 28, 2009, the US Trustee appointed Alan Nisselson to be Chapter 11 Trustee of the Debtor's estate pursuant to Bankruptcy Code §1104.

5.        This Court has jurisdiction of this adversary proceeding pursuant to, *inter alia*, 28 U.S.C. § 1334, Federal Rules of Bankruptcy Procedure 4004(a), 4007 and 7001(6), and 11 U.S.C. §§ 523 and 105(a).  This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

6.        Venue of this adversary proceeding in this judicial district is appropriate pursuant to 28 U.S.C. § 1409(a), as this proceeding arises in or is related to a case arising under Title 11, which is presently venued in this district as set forth above.

---

[1] The Debtor in this case appears *pro se* as Philip G. Barry a/k/a Barry Publications.  If Barry Publications is a legally separate entity existing under the laws of the State of New York, or any other jurisdiction, then to the extent that the Debtor intends Barry Publications to be a debtor in bankruptcy, such *pro se* representation is not permitted under the laws of this jurisdiction.

**PARTIES**

7.      Plaintiff Michael Vincent Miller ("MVM") is an individual who resides at 220 West 98th Street, Apt. 9F, New York, New York.

8.      Plaintiff Cassity Blake Miller ("CBM") is an individual who resides at 1427 York Avenue, Apt. 46, New York, New York.

9.      Upon information and belief, Debtor is a citizen of the State of New York and resides at 7802 Fourth Avenue, Brooklyn, New York and/or 477A 82nd Street, Brooklyn, New York.

10.     Upon information and belief, The Leverage Group ("Leverage") is an unincorporated New York entity which operates as a "d/b/a" of Debtor and/or is owned and operated by Debtor, and which has its principal place of business at 477A 82nd Street, Brooklyn, New York.

11.     Upon information and belief, Leverage Option Management Co., Inc. ("Leverage Option Management") is a New York corporation with its principal place of business at 477A 82nd Street, Brooklyn, New York.

12.     Upon information and belief North American Financial ("North American") is an unincorporated company which operates as a "d/b/a" of Debtor and/or is owned and operated by Debtor, and which has its principal place of business at 477A 82nd Street, Brooklyn, New York.

13.     Upon information and belief, Leverage Management, LLC ("Leverage Management") is a New York limited liability company with its principal place of business at 477A 82nd Street, Brooklyn, New York.

14.     Upon information and belief, Lake Joseph Development Corp. ("Lake Joseph") is a New York corporation with its principal place of business at 477A 82nd Street, Brooklyn, New York.

15.     Upon information and belief, Saint Josephs Development Corporation ("St. Josephs") is a New York corporation with its principal place of business at 477A 82nd Street, Brooklyn, New York.

16.     Upon information and belief, HK Holdings, LLC ("HK Holdings") is a New York limited liability company with its principal place of business at 477A 82nd Street, Brooklyn, New York.

17.     Upon information and belief, Philip Barry, LLC ("Barry, LLC") is a New York limited liability company with its principal place of business at 477A 82nd Street, Brooklyn, New York.

18.     Upon information and belief, Debtor is a principal, officer, director, or otherwise holds an interest in the foregoing non-defendant parties, who are not debtors in this Bankruptcy Case and not defendants in this adversary proceeding (collectively referred to herein as the "Related Entities").

## **FACTS**

19.     Upon information and belief, Debtor solicited individuals to make investments in Leverage since approximately 1977, during which time Debtor conducted a continuous and unregistered offering of interests in Leverage.

20.     In the Spring of 2007, MVM was introduced to Philip Barry, and was thereafter repeatedly solicited by Debtor to invest money with Debtor and his companies, including the Leverage Group, Leverage Option Management, North American, and Barry, LLC.

21.     To induce investors, including Plaintiffs, to purchase interests in Leverage through the unregistered offering, Debtor and the Related Entities made knowingly false oral and written statements and representations, and made material omissions (collectively, the "Representations"), including but not limited to the following:

(a)     Debtor was a professional investment manager with a successful track record in managing investments for individuals dating back to approximately 1977;

(b)     Debtor and Leverage had one of the most profitable, most reliable and best, performance records in the investment management business;

(c)     any investment in Leverage would be a safe place for an investor's money to grow;

(d)     any investment in Leverage would only be used to invest in stock options in publicly traded companies through a complex leveraging strategy;

(e)     by reason of the leveraging strategy Debtor employed, Leverage would make a profit regardless of whether the underlying security increased or decreased in value;

(f)     Leverage had consistently earned annual returns of at least 12.55% for its investors, and would continue to earn a guaranteed minimum annual return of 12.55% for each subsequent year;

(g)     interest income would be paid quarterly, which would be evidenced on quarterly statements sent to investors;

(h)     investors' principal could not decrease;

(i)     funds invested in Leverage would be held in a separate account for each investor; and,

(j)     investors would be able to liquidate their account(s) upon request.

22.     Upon information and belief, each of the Representations was materially false and misleading, however, because, *inter alia*:

(a)     Debtor's profitability, performance, and allegedly "successful track record" were the product of inaccurate, fraudulent, and false accounting;

(b)     investment in Leverage was not a safe investment, but was extremely risky and speculative;

     (c)    Debtor and the Related Entities had no reasonable basis for guaranteeing a profit, a 12.55% annual return to investors, and protection of principal;

     (d)    Debtor and the Related Entities did not maintain segregated accounts for investors;

     (e)    Debtor did not intend to employ a complex leveraging strategy with the investments obtained from Plaintiffs and other investors through the offering, but intended to use such moneys for other, undisclosed purposes;

     (f)    Debtor did not engage in a stock options leveraging strategy, but instead (i) used the funds invested by Plaintiffs and others to satisfy redemption requests of other investors as part of a Ponzi scheme and/or to purchase, *inter alia*, approximately 2,200 acres of real property in Sullivan County, NY and elsewhere, and/or (ii) transferred some or all of the funds invested by Plaintiffs and others to the Related Entities or other companies so that they could purchase real property and other property;

     (g)    the principal investment was not safe; and,

     (h)    Debtor and the Related Entities did not always permit investors to withdraw their money upon request.

23.    The Representations made to Plaintiffs and the other investors in Leverage were knowingly false when they were made by Debtor.

24.    In reliance upon the Representations, MVM invested $100,000.00 in Leverage on or about October 1, 2007 and invested $50,000.00 in Leverage on or about December 2, 2007. Based upon the Representations, MVM referred CBM to Debtor, and in reliance upon the Representations, CBM invested $9,000.00 in Leverage on or about January 10, 2008. The $150,000.00 invested by MVM represented the major portion of his life savings and the $9,000.00 invested by CBM in Leverage represented her entire savings which she intended to use to pay for her graduate school education.

25.    In December 2007, Plaintiffs received a letter (the "December 2007 Letter") from "North American Financial: The Leverage Group," and advised Plaintiffs and the other investors in Leverage that the group was entering "its 30th year with one of the most consistent records in

the investment management business" and again promised an annual yield of 12.55%. The December 2007 Letter was signed by "Philip Barry, President." (A copy of the December, 2007 Letter is annexed hereto as Exhibit "1".)

26.    From the time of Plaintiffs' investment in Leverage to and including June, 2008, Debtor mailed Quarterly Statements to them reflecting the guaranteed 12.55% effective annual yield on their investments, which were growing as the investment gains were reinvested in their accounts. The June 30, 2008 statements sent to Plaintiffs indicated that the closing balance in MVM's account was $162,847.61 and that the closing balance in CBM's account was $9,516.58. (Copies of the June 2008 account statements for MVM and CBM are annexed hereto as Exhibit "2" and Exhibit "3", respectively.)

27.    Debtor failed to send a quarterly statement to Plaintiffs in October, 2008, prompting MVM to attempt to contact Debtor in late October or early November, 2008. Debtor responded to MVM by telephone, advising MVM that the quarterly statements were "late" because Leverage was switching over to a new computer system to issue the statements, that same would be sent out "soon," and that Plaintiffs' investments were perfectly secure. Despite the promise that a statement would be sent "soon," no statement was ever sent to Plaintiffs for the period ending September 2008.

28.    Between October 2008 and December 2008, and in response to Plaintiffs' inquiries about the status of Leverage and Plaintiffs' investments therein, Debtor made and continued to make affirmative and material misrepresentations to Plaintiffs on multiple occasions, including, *inter alia*, that Leverage was operating as normal and that Plaintiffs' investments were safe and growing at 12.55% annually, and omitted to mention the existence of multiple lawsuits brought by other investors against him and the Related Entities. In fact, in

December 2008 (which was after the filing of the Petition herein), Debtor left a telephone message for MVM stating that Leverage was doing fine and was an "oasis" from the financial storm.

29.    At the time Debtor made these statements and omissions, he knew they were false. These statements and omissions were intended to, and had the effect of, discouraging and preventing Plaintiffs from learning of the true actions of Debtor, the falseness of Debtor's claims, their potential legal claims, and the fact that they need to pursue legal action against Debtor.

30.    Plaintiffs relied on Debtor's false statements and omissions to their detriment.

31.    Debtor and the Related Entities have not returned the funds Plaintiffs invested with them and have stated they are unable to do so.

## FIRST CLAIM
(Violation of Federal Securities Laws)

32.    Plaintiffs repeat, reiterate, and reallege the foregoing allegations as if fully set forth herein.

33.    The options in which Debtor and the Related Entities traded or purported to trade on Plaintiffs' behalf are a "security" or "securities" within the meaning of Sections 3(a)(10) and 10(b) of the Securities Exchange Act, 15 U.S.C. §§ 78c(a)(l0), 78j(b), and SEC Rule l0b-5.

34.    Debtor and the Related Entities, directly and indirectly, singly and in concert, knowingly or recklessly, by use of the means and instrumentality of interstate commerce or of the mails, in the offer or sale, and in connection with the purchase or sale of securities have, *inter alia*, (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of, or otherwise made untrue statements of material fact, or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which they were

made, not misleading; and, (c) engaged in transactions, acts, practices, and courses of business which operated as a fraud or deceit upon purchases of securities.

35.     In furtherance of this conduct, Debtor and the Related Entities made the Representations to Plaintiffs which were material to Plaintiffs decision to invest in Leverage, and the Related Entities knew or should have known that the Representations were false or misleading at the time they were made, and knew or should have known that they were or would be relied upon by Plaintiffs, including by having investors in Leverage recruit other investors.

36.     By reason of the acts, omissions, practices and courses of business set forth in this Complaint, the Debtor and the Related Entities have violated the securities laws of the United States, including but not limited to, Sections 3(a)(10) and 10(b) of the Securities Exchange Act, 15 U.S.C. §§ 78c(a)(l0), 78j(b), and SEC  Rule l0b-5.

37.     Plaintiffs reasonably relied upon the Representations and other knowingly false statements and omissions by Debtor and the Related Entities in deciding to invest in Leverage.

38.     The actions of Debtor and the Related Parties were wantonly reckless, malicious, intentional, were accompanied by wanton and willful disregard of Plaintiffs' rights, and were extreme and outrageous and beyond all bounds of fairness and decency.

39.     As a result of the foregoing, MVM has sustained damages in the amount of $172,038.19 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due, and CBM has sustained damages in the amount of $10,355.27 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due.  Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

## **SECOND CLAIM**
(Violation of 18 USC § 1962(c) – Federal RICO)

40.     Plaintiffs repeat, reiterate, and reallege, reiterate, the foregoing allegations as if fully set forth herein.

41.     At all times relevant to this complaint Debtor and the Related Entities were "persons" within the meaning of 18 U.S.C. § 1961(3).

42.     At all times relevant to this complaint, the Debtor and some or all of the Related Entities (the "RICO Defendants") directly or indirectly maintained an interest in or participated in the operation of Leverage, which is an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

43.     As set forth more fully above, the foregoing RICO Defendants corrupted Leverage and caused Plaintiffs substantial damages through a pattern of racketeering activity.  At all times relevant to this complaint, the foregoing RICO Defendants conducted or participated, directly or indirectly, in the operation and management of the Leverage Group through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and (5) and 1962(c).  This pattern of racketeering activity entailed at least two predicate acts of racketeering activity by the foregoing RICO Defendants.

44.     The aforementioned pattern of racketeering consisted of a multitude of acts that are indictable under 18 U.S.C. §§ 1341, 1343, and 1346 and are within the scope of 18 U.S.C. §§ 1961(1).  As set out more fully herein, the commission of at least two of those related predicate acts over the last 10 years constituted a continuous and related pattern of racketeering activity as defined in 18 U.S.C. § 1961(1) and (5).

45.     As part of and in furtherance of the fraudulent schemes and artifices described aforesaid, the RICO Defendants made repeated use of, or had reason to believe that others would

use, the U.S. Postal Service, interstate overnight couriers, and the interstate wires to transmit various documents, including without limitation the Quarterly Statements, contracts, letters and investment-deposit checks ("the Transmissions").

46. Each Transmission constituted, *inter alia*: (a) the transmittal by means of wire communication in interstate commerce of signals, sounds or writings; (b) the use of the U.S. Postal Service; and/or, (c) the use of interstate overnight couriers for the purpose of executing or in connection with the aforementioned schemes and artifices to defraud. The foregoing RICO Defendants knew or had reason to believe that these transmissions were in furtherance of advancing the aforesaid corrupt enterprise or were incidental to an essential part of the aforesaid corrupt enterprise.

47. The RICO Defendants made the Transmissions, or caused the Transmissions to be made, with the specific intent of defrauding Plaintiffs and other investors and potential investors in the Leverage entities. Each of the Transmissions furthered the aforementioned schemes and artifices to defraud, which were intended to and did proximately cause injury to Plaintiffs and others in their business and property. Those acts constituted offenses indictable as crimes under the "mail fraud" and "wire fraud" statutes, 18 U.S.C. §§ 1341, 1343, and 1346.

48. Plaintiffs reasonably relied upon the Representations and other knowingly false statements and omissions by the foregoing RICO Defendants in connection with the aforementioned schemes or artifices to defraud.

49. The actions of Debtor and the Related Parties were wantonly reckless, malicious, intentional, were undertaken with wanton and willful disregard of Plaintiffs' rights, and were extreme and outrageous and beyond all bounds of fairness and decency.

11

50.     As a result of the foregoing, MVM has sustained damages in the amount of $172,038.19 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due, and CBM has sustained damages in the amount of $10,355.27 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due.  Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

### THIRD CLAIM
(Violation of 18 USC § 1962(d) – Federal RICO Conspiracy)

51.     Plaintiffs repeat, reiterate, and reallege the foregoing allegations as if fully set forth herein.

52.     Since at least 1988 through and including the present, the RICO Defendants unlawfully and willfully combined, conspired, confederated, and agreed between and among each other to violate 18 USC § 1962(c), *i.e.* to conduct and participate, directly and indirectly, in the affairs of the Leverage Group through a pattern of racketeering, all in violation of 18 USC section 1962(d).

53.     As part of this conspiracy, each of the foregoing RICO Defendants personally agreed to commit and in fact committed two or more predicate racketeering acts within the last 10 years and agreed to conduct and in fact conducted the affairs of the Leverage Group through a pattern of racketeering activity in violation of 18 USC § 1962(c).

54.     The actions of Debtor and the Related Parties were wantonly reckless, malicious, intentional, were undertaken with wanton and willful disregard of Plaintiffs' rights, and were extreme and outrageous and beyond all bounds of fairness and decency.

55.     As a result of the foregoing, MVM has sustained damages in the amount of $172,038.19 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which

may be due, and CBM has sustained damages in the amount of $10,355.27 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due. Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

## FOURTH CLAIM
(Common Law Fraud)

56.     Plaintiffs repeat, reiterate, and reallege the foregoing allegations as if fully set forth herein.

57.     Defendant, individually and on behalf of the Related Entities, made numerous false and misleading statements to Plaintiffs both orally and in writing, including but not limited to the Representations, upon which Debtor expected Plaintiffs to rely.

58.     Upon information and belief, Debtor improperly used Plaintiffs' funds in a manner other than that which he stated in the Representations; specifically, Debtor transferred Plaintiffs' funds to the Related Entities, used Plaintiffs' funds to pay off the account redemptions of other investors, and/or used Plaintiffs' funds to purchase numerous properties in Sullivan County, New York and elsewhere.

59.     Defendant, individually and on behalf of, the Related Entities, acted with the intention to deceive and mislead the Plaintiffs, to fraudulently induce them to invest in the Leverage entities and to fraudulently misappropriate and obtain control over the funds that Plaintiffs invested with Debtor and the Related Entities.

60.     Debtor and the Related Entities knew at the time they made the Representations and omitted to disclose other information that same were false, deceptive, and misleading, knew that the Representations and omissions were material to, knew that the Representations and

omissions would be relied upon by, Plaintiffs, and were specifically made for the purpose of inducing Plaintiffs to invest in Leverage.

61.    Plaintiffs reasonably relied upon the Representations in deciding to invest in Leverage.

62.    The actions of Debtor and the Related Parties were wantonly reckless, malicious, intentional, were undertaken with wanton and willful disregard of Plaintiffs' rights, and were extreme and outrageous and beyond all bounds of fairness and decency.

63.    As a result of the foregoing, MVM has sustained damages in the amount of $172,038.19 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due, and CBM has sustained damages in the amount of $10,355.27 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due.  Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

## FIFTH CLAIM
(Conversion)

64.    Plaintiffs repeat, reiterate, and reallege the foregoing allegations as if fully set forth herein.

65.    Debtor and the Related Entities agreed orally and in writing that the funds invested by Plaintiffs would be held in segregated accounts for their benefit.

66.    Upon information and belief, and without Plaintiffs' consent or authority, Debtor and the Related Entities unlawfully converted property owned by the Plaintiffs, consisting of cash and securities in their Leverage accounts for their own benefit by, *inter alia*, transferring such sums to the Related Entities, purchasing real estate in Sullivan County, New York, and/or repaying the redemption requests of other investors in Leverage.

67.     Debtor and the Related Entities converted the property of Plaintiffs through the aforesaid fraudulent scheme.

68.     Plaintiffs have demanded the return of the wrongfully converted property, but Debtor and the Related Entities have failed and/or refused to return it.

69.     The actions of Debtor and the Related Parties were wantonly reckless, malicious, intentional, were undertaken with wanton and willful disregard of Plaintiffs' rights, and were extreme and outrageous and beyond all bounds of fairness and decency.

70.     As a result of the foregoing, MVM has sustained damages in the amount of $172,038.19 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due, and CBM has sustained damages in the amount of $10,355.27 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due.  Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

**SIXTH CLAIM**
(Negligent Misrepresentation)

71.     Plaintiffs repeat, reiterate, and reallege the foregoing allegations as if fully set forth herein.

72.     At all relevant times, Debtor and the Related Entities owed Plaintiffs a duty to provide correct and accurate information.

73.     The Representations made to Plaintiffs and the omissions of other information were factually inaccurate and incorrect.

74.     Debtor and the Related Entities knew or should have known that the information they were providing to Plaintiffs was inaccurate and incorrect.

75.     Plaintiffs reasonably relied on the Representations and/or omissions to their detriment when making investment decisions with Debtor and the Related Entities.

76.     Defendants and the Related Entities breached their duty to provide Plaintiffs with accurate and correct information.

77.     The breach of the duty to provide accurate and correct information to Plaintiffs was the proximate cause of damages to Plaintiffs.

78.     The actions of Debtor and the Related Parties were wantonly reckless, malicious, intentional, were undertaken with wanton and willful disregard of Plaintiffs' rights, and were extreme and outrageous and beyond all bounds of fairness and decency.

79.     MVM has sustained damages in the amount of $172,038.19 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due, and CBM has sustained damages in the amount of $10,355.27 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due.  Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

## SEVENTH CLAIM
(Breach of Fiduciary Duty)

80.     Plaintiffs repeat, reiterate, and reallege the foregoing allegations as if fully set forth herein.

81.     By holding themselves out as a securities broker and/or lender, Defendants and the Related Entities owed a fiduciary duty to Plaintiffs and were required to treat them with the utmost good faith and diligence.

82.    Debtor and the Related Entities breached their fiduciary duties to Plaintiffs by, *inter alia*, making the aforesaid Representations, which were false and/or which contained material omissions of fact, and by failing to repay Plaintiffs the funds due and owing to them.

83.    The actions of Debtor and the Related Parties were wantonly reckless, malicious, intentional, were undertaken with wanton and willful disregard of Plaintiffs' rights, and were extreme and outrageous and beyond all bounds of fairness and decency.

84.    As a result of the foregoing, MVM has sustained damages in the amount of $172,038.19 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due, and CBM has sustained damages in the amount of $10,355.27 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due.  Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

## EIGHTH CLAIM
(Breach of Contract)

85.    Plaintiffs repeat, reiterate, and reallege the foregoing allegations as if fully set forth herein.

86.    The aforesaid agreements between Plaintiffs and Debtor and the Related Entities required the Debtor and the Related Entities to pay interest on Plaintiffs' principal deposits at an annual rate of at least 12.55%.  Debtor and the Related Entities were also required to return Plaintiffs' principal and accrued interest, which Debtor failed and/or refused to do.

87.    Debtor and the Related Entities have breached their contract with the Plaintiffs by, *inter alia*, failing and/or refusing to return to Plaintiffs their principal and accrued interest.

88.     The actions of Debtor and the Related Parties were wantonly reckless, malicious, intentional, were undertaken with wanton and willful disregard of Plaintiffs' rights, and were extreme and outrageous and beyond all bounds of fairness and decency.

89.     As a result of the foregoing, MVM has sustained damages in the amount of $172,038.19 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due, and CBM has sustained damages in the amount of $10,355.27 as of March 18, 2009, plus interest, costs, attorneys' fees, and other amounts which may be due.  Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

## NINTH CLAIM
(Breach of Implied Duty of Good Faith and Fair Dealing)

90.     Plaintiffs repeat, reiterate, and reallege the foregoing allegations as if fully set forth herein.

91.     Every contract in the State of New York contains the implied covenants of good faith and fair dealing.

92.     Debtor and the Related Entities have breached the implied covenants of good faith and fair dealing contained in their agreement with Plaintiffs by inter alia: (a) making material misrepresentations and/or omissions of fact in order to induce Plaintiffs to invest with Debtor and the Related Entities; (b) failing to segregate and then improperly converting Plaintiffs' funds for their own use; (c) failing to return the funds to Plaintiffs upon due demand; and, (d) continuing to make material misrepresentations and/or omissions of fact in order to induce Plaintiffs to remain invested with him and the Related Entities.

93.     The actions of Debtor and the Related Parties were wantonly reckless, malicious, intentional, were undertaken with wanton and willful disregard of Plaintiffs' rights, and were extreme and outrageous and beyond all bounds of fairness and decency.

94.     As a result of the breach of the implied covenants of good faith and fair dealing, MVM has sustained damages in the amount of $172,038.19, plus interest, costs, and other amounts which may be due, and CBM has sustained damages in the amount of $10,355.27 and other amounts which may be due.  Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

### TENTH CLAIM
(Unjust Enrichment)

95.     Plaintiffs repeat, reiterate, and reallege the foregoing allegations as if fully set forth herein.

96.     Debtor and the Related Entities agreed to hold Plaintiffs' investment deposits in a separate account, pay a guaranteed annual yield, and to return the full amount of the funds held in Plaintiffs' accounts upon due demand.

97.     Plaintiffs made investment deposits with Debtor in reliance upon the Representations, which were actually false and contained material omissions.

98.     Debtor has failed to return the moneys to Plaintiffs.

99.     Debtor and the Related Entities have been unjustly enriched by obtaining the foregoing investment deposits, enjoying the use of this money for their own benefit, and earning profits thereon.

100.    It is inequitable for the Debtor and the Related Entities to retain the moneys invested by Plaintiffs.

19

101.    The actions of Debtor and the Related Parties were wantonly reckless, malicious, intentional, were undertaken with wanton and willful disregard of Plaintiffs' rights, and were extreme and outrageous and beyond all bounds of fairness and decency.

102.    As a result of the unjust enrichment, MVM has sustained damages in the amount of $172,038.19, plus interest, costs, and other amounts which may be due which may be due, and CBM has sustained damages in the amount of $10,355.27 and other amounts which may be due. Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

### ELEVENTH CLAIM
(Imposition of Constructive Trust)

103.    Plaintiffs repeat, reiterate, and reallege the foregoing allegations as if fully set forth herein.

104.    At all relevant times, Debtor and the Related Entities had a confidential or fiduciary relationship with Plaintiffs.

105.    Debtor and the Related Entities agreed to hold Plaintiffs' investment deposits in a separate account, pay a guaranteed annual yield, and to return the full amount of the funds held in Plaintiffs' account upon due demand.

106.    Plaintiffs made investment deposits in the Leverage entities in reliance upon the Representations, which were actually false and contained materials omissions.

107.    Debtor and the Related Entities have been unjustly enriched by obtaining the investment deposits from Plaintiffs, by enjoying the use of this money for their own benefit, and earning profits thereon.

108.    Plaintiffs have sustained substantial damages and have been irreparably harmed by the actions of Debtor and the Related Entities.

109.    Accordingly, a constructive trust or equitable lien should be imposed upon the assets of Debtor and the Related Entities in favor of Plaintiffs.

## TWELFTH CLAIM
(11 U.S.C. § 523(a)(2)(A))

110.    Plaintiffs repeat, reiterate, and reallege the foregoing allegations as if fully set forth herein.

111.    Debtor obtained money or other property from Plaintiffs through a careful and deliberate Ponzi scheme under the guise of financial planning and investing.

112.    The acts and conduct of Debtor constitute the obtaining of money, property, services, or an extension, renewal, or refinancing of credit from Plaintiffs through false pretenses, false representations, or actual fraud, as set forth in 11 U.S.C. § 523(a)(2)(A).

113.    Accordingly, MVM and CBM are entitled to a determination that any judgment issued herein is excepted from discharge, together with such other and further relief which as to this Court seems just, proper, and equitable.

## THIRTEENTH CLAIM
(11 U.S.C. § 523(a)(2)(B))

114.    Plaintiffs repeat, reiterate, and reallege the foregoing allegations as if fully set forth herein.

115.    Debtor obtained money or other property from Plaintiffs through a careful and deliberate Ponzi scheme under the guise of financial planning and investing.

116.    The acts and conduct of Debtor constitute the obtaining of money, property, services, or an extension, renewal, or refinancing of credit from Plaintiffs through the use of written statements which were materially false, concerned the financial condition of Debtor

and/or the Related Entities, upon which Plaintiffs reasonably relied, and which were made or published to deceive Plaintiffs, as set forth in 11 U.S.C. § 523(a)(2)(B)(i)-(iv).

117.    Accordingly, MVM and CBM are entitled to a determination that any judgment issued herein is excepted from discharge, together with such other and further relief which as to this Court seems just, proper, and equitable.

## FOURTEENTH CLAIM
### (11 U.S.C. § 523(a)(4))

118.    Plaintiffs repeat, reiterate, and reallege the foregoing allegations as if fully set forth herein.

119.    The acts and conduct of Debtor as set forth herein above constitute fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, as set forth in 11 U.S.C. § 523(a)(4).

120.    Accordingly, MVM and CBM are entitled to a determination that any judgment issued herein is excepted from discharge, together with such other and further relief which as to this Court seems just, proper, and equitable.

## FIFTEENTH CLAIM
### (11 U.S.C. § 523(a)(6))

121.    Plaintiffs repeat, reiterate, and reallege the foregoing allegations as if fully set forth herein.

122.    The acts and conduct of Debtor constitute willful and malicious injury by the Debtor to the Plaintiffs and their property of the Plaintiffs, as set forth in 11 U.S.C. § 523(a)(6).

123.    Accordingly, MVM and CBM are entitled to a determination that any judgment issued herein is excepted from discharge, together with such other and further relief which as to this Court seems just, proper, and equitable.

**SIXTEENTH CLAIM**
(11 U.S.C. § 523(a)(19))

124.    Plaintiffs repeat, reiterate, and reallege all of the foregoing allegations as if fully set forth herein.

125.    The acts and conduct of Debtor are in violation of federal and/or state securities laws and/or regulations or orders issued under such federal and/or state securities laws, as set forth in 11 U.S.C. § 523(a)(19)(A)(i).

126.    The acts and conduct of Debtor constitute common law fraud, deceit, or manipulation in connection with the purchase or sale of securities, as set forth in 11 U.S.C. § 523(a)(19)(A)(ii).

127.    The acts and conduct of Debtor will result in issuance of a judgment, order, or decree in this proceeding, as set forth in 11 U.S.C. § 523(a)(19)(B)(i) and (iii).

128.    Accordingly, MVM and CBM are entitled to a determination that any judgment issued herein is excepted from discharge, together with such other and further relief which as to this Court seems just, proper, and equitable.

**WHEREFORE**, plaintiffs Michael Vincent Miller and Cassity Blake Miller respectfully demand judgment against defendants Philip G. Barry a/k/a Barry Publications on each of the monetary claims set forth in this Complaint, together with interest, costs of suit herein, attorneys' fees, and all other charges due or to become due, and a judgment on each of the claims seeking a determination that the amounts determined to be due herein are non-dischargeable pursuant to 11

U.S.C. § 523, and for such other and further relief which as to this Court may seem just, equitable, and proper.

Dated: New York, New York
      April 30, 2009

Respectfully submitted,

DAY PITNEY LLP

By:    /s/ Jonathan Matthew Borg
        Jonathan Matthew Borg (JB9487)

7 Times Square
New York, NY  10036
Telephone:    (212) 297-5800
Facsimile:    (212) 916-2940

Attorneys for Plaintiffs,
Michael Vincent Miller and
Cassity Blake Miller
