## ADVERSARY PROCEEDING COVER SHEET

(Instructions on Reverse)

**ADVERSARY PROCEEDING NO.**

**PLAINTIFF(S)**
Linda Poluha, LaDonna Pavetti, Keith Pavetti, Michael Poluha, Jennifer Poluha Carota, Sydney Pavetti

**DEFENDANT(S)**
Philip Barry a/k/a Barry Publications

**ATTORNEY(S)** (Firm Name, Address, Telephone No.)
Schoeps & Specht
334 S. Middletown Road
Nanuet, New York 10954
(845) 624-1041

**ATTORNEY(S)** (If Known)

**PARTY** (Check One Box Only)
☐ Debtor ☐ U.S. Trustee
☑ Creditor ☐ Trustee ☐ Other

**PARTY** (Check One Box Only)
☑ Debtor ☐ U.S. Trustee
☐ Creditor ☐ Trustee ☐ Other

**CAUSE OF ACTION** (Write a brief statement of cause of action, including all U.S. statutes involved.)
For damages and exception from discharge due to fraud and fraudulent conversion, in violation of Sections 3(a)(1) and 10(b) of the Securities Exchange Act, 13 U.S.C. 78c(a)(10), 78j(b), and S.E.C. Rule 10b-5.

### NATURE OF SUIT

(Number up to 5 boxes with the lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11 – Recovery of money/property - § 542 turnover of property
☐ 12 – Recovery of money/property - § 547 preference
☐ 13 – Recovery of money/property - § 548 fraudulent transfer
☐ 14 – Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21 – Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31 – Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41 – Objection/revocation of discharge - § 727(c), (d), (e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51 – Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66 – Dischargeability - § 523(a)(1), (14), (14A) priority tax claims
[1] 62 – Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
[2] 67 – Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 – Dischargeability - § 523(a)(5), domestic support
☐ 68 – Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63 – Dischargeability - § 523(a)(8), student loan
☐ 64 – Dischargeability - § 523 (a)(15), divorce or separation obligation (other than domestic support)
[3] 65 – Dischargeability – other

**FRBP 7001(7) – Injunctive Relief**
☐ 71 – Injunctive relief – imposition of stay
☐ 72 – Injunctive relief – other

**FRBP 7001(8) – Subordination of Claim or Interest**
☐ 81- Subordination of claim or interest

**FRBP 7001(9) – Declaratory Judgment**
☐ 91 – Declaratory judgment

**FRBP 7001(10) – Determination of Removed Action**
☐ 01 – Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa et seq.
☐ 02 – Other (e.g.,other actions that would have been brought in state court if unrelated to bankruptcy case)

☑ Check if this case involves a substantive issue of state law

☐ Check if this is asserted to be a class action under FRCP 23

☐ Check if a jury trial is demanded in complaint

Demand: $ ~~650,000.00~~ $285,000.00

Other Relief Sought:

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Philip Barry a/k/a Barry Publications | BANKRUPTCY CASE NO.<br>08-47352 (dem) | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District New York | DIVISION OFFICE<br>Brooklyn | NAME OF JUDGE<br>Hon. Dennis E. Milton |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY PROCEEDING IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|
| [signature] | |
| DATE<br>6/10/09 | |

**INSTRUCTIONS**

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet. When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
LINDA POLUHA, LADONNA PAVETTI, KEITH PAVETTI, MICHAEL POLUHA, JENNIFER POLUHA CAROTA and SYDNEY PAVETTI,

Chapter 11
Case No. 08-47352 (dem)

-against-

PHILIP G. BARRY,

Adversary No.

Defendant.
---------------------------------------------------------X

COMPLAINT TO DETERMIMNE DISCHARGEABILITY OF DEBT PURSUANT TO
11 U.S.C. SECTION 523

Plaintiffs, by way of Complaint against Defendant, the Debtor, Philip G. Barry, by their attorneys, Schoeps & Specht, allege as follows:

JURISIDICTION AND VENUE

1. On October 31, 2008, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of New York, under Case No. 08-47352.

2. This Court has jurisdiction of this adversary proceeding pursuant to 28 US.C. 1334, and 11 U.S.C. 523 and 105(a). This adversary proceeding is a core proceeding under 28 U.S.C. 157(2)(I).

3. Venue of this adversary proceeding in this judicial district is

appropriate pursuant to 28 U.Sc.3 1409(a), as this proceeding arises from debtor's Chapter 11 case presently venued in this district.

PARTIES

4. Defendant Philip G. Barry is, upon information, a resident of the State of New York, residing in Brooklyn, New York.

5. The plaintiffs are individuals who invested money with defendant Barry and/or his company, the Leverage Group.

FACTUAL BACKGROUND

6. In August, 2001, plaintiffs Linda Poluha and Jennifer Poluha Carota were referred to defendant to invest their money with him and his company, the Leverage Group.

7. On or about August 1, 2001, plaintiffs Linda Poluha and Jennifer Poluha Carota opened an account (Account 8-061-01) with the Leverage Group by making an initial deposit of $5,000.00.

8. Shortly thereafter, plaintiffs Linda Poluha and Jennifer Poluha Carota received from defendant a statement dated August 6, 2001, acknowledging receipt of the $5,000.00 investment and indicating that this account was guaranteed to earn a minimum 12.55% interest for the remainder of the calendar year.

9. On or about August 11, 2004, Linda Poluha made an additional $23,000.00 deposit to this account.

10. On or about December 14, 2004, Linda Poluha made a further deposit

of $12,348.00 to the account.

11.     On or about June 6, 2005, Linda Poluha transferred $36,000.00 from Account 8-061-01 to open a second account with defendant, under Account 6-061-05, in the name of Linda Poluha and Ladonna Cavetti.

12.     On October 1, 2006, Linda Poluha withdrew $4,000.00 from Account 8-061-01.

13.     On November 3, 2007, Linda Poluha withdrew $4,500.00 from Account 8-061-01.

14.     In late 2007, Linda Poluha wrote to defendant, requesting that Account 8-061-01 be closed. Defendant sent Linda Poluha three checks totaling $8,050.22 to close the account. The third check, dated May 24, 2008, $2,000.00, was returned for insufficient funds.

15.     On July 28, 2008, Linda Poluha spoke with defendant about the dishonored check. Defendant informed Linda Poluha that a new check would be issued that week. No such check was ever received by Linda Poluha, leaving a balance of $2,000.00 in Account 8-061-01.

16.     In April, 2004, Linda Poluha opened Account 4-012-04 for her brother, plaintiff Keith Pavetti, with defendant by making an initial deposit in the amount of $27,667.00 with the Leverage Group.

17.     Shortly thereafter, Keith Pavetti received from defendant a statement dated April 1, 2004, acknowledging receipt of the $27,667.00.00 investment and

indicating that this account was guaranteed to earn a minimum 12.55% interest for the remainder of the calendar year.

18. In June, 2004, Keith Pavetti made an additional deposit of $20,000.00 to Account 4-012-04.

19. The last statement received by Keith Pavetti for this account was dated March 31, 2008, and indicated a closing balance of $75,689.49.

20. In April, 2004, Linda Poluha opened Account 4-013-04 with defendant by making an initial deposit of $27,667.00 to the Leverage Group.

21. Subsequently, Linda Poluha received from defendant a statement acknowledging the $27,667.00 deposit and indicating that this account was guaranteed to earn a minimum interest of 12.55% for the remainder of the calendar year.

22. In June, 2004, Linda Poluha made an additional deposit of $20,000.00 to Account 04-013-04.

23. The last statement received by Linda Poluha for this account was dated March 31, 2008 and indicated a closing balance of $75,689.49.

24. In April, 2004, Linda Poluha opened Account 4-014-04 for her sister, Ladonna Pavetti, with defendant by making an initial deposit in the amount of $17,667.00 with the Leverage Group.

25. Subsequently, Ladonna Pavetti received a statement from defendant, acknowledging receipt of the $17,667.00 deposit and indicating that this account

33. Subsequently, Michael Poluha and Linda Poluha received from defendant a statement dated October 1, 2006, acknowledging receipt of the $4,000.00 deposit and indicating that this account was guaranteed to earn a minimum 12.55% interest for the remainder of the calendar year.

34. Michael Poluha and Linda Poluha received quarterly statements through March, 2008. The last statement received, dated March 31, 2008, and indicated a balance of $4,776.21.

35. In July, 2007, Linda Poluha opened Account 7-121-07 for Keith Pavetti and Sydney Pavetti with defendant by making an initial deposit in the amount of $1,000.00.

36. Keith Pavetti and Sydney Pavetti received quarterly statements through June 2008. The last statement received, for the quarter ending June, 2008, indicated a balance of $1,121.03.

37. On or about January 11, 2008, plaintiffs requested in writing that defendant close their various accounts and remit to them the balances from each account.

38. Defendant did not respond to plaintiffs' requests to close their accounts.

39. Linda Poluha and Ladonna Pavetti telephoned defendant on a regular basis, repeatedly requesting that he return their investments to them.

40. Defendant advised plaintiffs that he was unable to return their funds

since the Leverage Group was only allowed to disperse a certain amount of money for each quarter and that his requests for payouts exceeded that amount.

41. Defendant advised plaintiffs that their funds remained safely invested but that they would have to await their return.

42. On May 2, 2008, Linda Poluha sent another letter to defendant, again demanding the return of the invested funds from all accounts.

43. To date, none of the invested funds have ever been returned to plaintiffs.

44. On or about February 20, 2009, plaintiffs received a letter from defendant, addressed to "Leverage Group Client", in which defendant stated that the only assets held by or for the benefit of the Leverage Group's investors consisted of various real estate holdings; that as a result of the filing of multiple actions against defendant in the United States District Court, Eastern District of New York, these assets were attached or otherwise "frozen"' that no other assets existed; and that the real estate holdings were not likely to generate the liquidity needed to return the balances reflected in the account statements.

COUNT I

45. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

46. The options in which defendant traded or purported to trade on plaintiffs' behalf are a "security" or "securities" within the meaning of Sections

3(a)(10) and 10(b) of the Securities Exchange Act, 15 U.S.C. Section 78c(a)(10), 78j(b), and S.E.C. Rule 10b-5.

47.    Defendant, and the Leverage Group and related entities, directly and indirectly, singly and in concert, knowingly or recklessly, by the use of the means and instrumentality of interstate commerce or of the mails, in the offer or sale, and in connection with the purchase or sale, of securities, have inter alia (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of, or otherwise made untrue statements of material fact, or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts, practices, and courses of business which operated as fraud or deceit upon purchasers of securities.

48.    In furtherance of this conduct, defendant has made numerous misrepresentations, including but not limited to the following:

    a.    That defendant was an investment advisor with a successful track record in managing investments for individuals through the Leverage Group and other private funds that he managed;

    b.    That defendant engaged in covered call writing where investors' principal could never be lost;

    c.    That the firm's successful track record dated back to approximately 1977;

d.  That the firm had one of the best performance records in the investment management business;

e.  That the Leverage Group had 350 investors, none of which had ever lost any money;

f.  That the Leverage Group had consistently earned annual returns not lower than 12.55% and as high as 20.00%;

g.  That investment in the Leverage Group involved minimal or no and would be "safe";

h.  That plaintiffs' money would be maintained in a segregated account for each investor;

i.  That plaintiffs would receive quarterly statements evidencing the change in their accounts over the quarter; and

j.  That as investors in the Leverage Group plaintiffs would be able to liquidate their accounts upon request.

49. These representations were material, and defendant knew or should have known that the material representations were false and misleading.

50. By reasons of these acts, omissions, practices and courses of business set forth in this Complaint, defendant and the related entities have violated the securities laws of the United States, including but not limited to, Sections 3(a)(1) and 10(b) of the Securities Exchange Act, 13 U.S.C. 78c(a)(10), 78j(b), and S.E.C. Rule 10b-5.

51. Plaintiffs reasonably relied upon defendants' misrepresentations regarding the Leverage Group in deciding to invest their funds.

52. As a result of the foregoing, defendants sustained substantial damages in the amount of $284,779.70 and have been irreparably harmed thereby.

COUNT II

53. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth at length herein.

54. Defendant offered to invest plaintiffs' savings, generate interest at a rate of 12.55% per year, and thereafter, provide quarterly statements to plaintiffs. Based upon the quarterly statements, plaintiffs would be able to ascertain the balance on their investments at the end of every quarter, and would be entitled to withdraw their money at any time. Plaintiffs invested substantial portions of their savings with the Leverage Group, anticipating that such investments would provide them with income to help plaintiffs care for their elderly parents.

55. Plaintiffs performed under the contract by investing their money.

56. Defendant has breached the contract by, inter alia, failing and/or refusing to return their principal investments and not paying the interest that was promised. In addition, plaintiffs have not received a quarterly statement since March, 2008, for six of their accounts and since June, 2008, for one account. Plaintiffs' requests to withdraw their funds were refused.

57. As a result of the breach of contract, plaintiffs have and will continue

to sustain substantial damages and will continue to be imminently and irreparably harmed.

COUNT III

58. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

59. Defendant made numerous false and misleading statements upon which the Defendant expected Plaintiffs to rely, including, but not limited to the following:

a. That defendant was an investment advisor with a successful track record in managing investments for individuals through the Leverage Group and other private funds that he managed;

b. That defendant engaged in covered call writing where investors' principal could never be lost;

c. That the firm's successful track record dated back to approximately 1977;

d. That the firm had one of the best performance records in the investment management business;

e. That the Leverage Group had 350 investors, none of which had ever lost any money;

f. That the Leverage Group had consistently earned annual returns not lower than 12.55% and as high as 20.00%;

   g. That investment in the Leverage Group involved minimal or no and would be "safe";

h. That plaintiffs' money would be maintained in a segregated account for each investor;

i. That plaintiffs would receive quarterly statements evidencing the change in their accounts over the quarter; and

j. That as investors in the Leverage Group plaintiffs would be able to liquidate their accounts upon request.

60. Additionally, upon information and belief, Defendant fraudulently converted Plaintiff's funds and used them to purchase real property throughout the State of New York.

61. Defendant acted with the intention to deceive and mislead the Plaintiffs, to fraudulently induce them to invest in the Leverage entities, and to fraudulently misappropriate and obtain control over the funds that Plaintiffs invested with Defendant.

62. Defendant knew at the time he made these false, deceptive and misleading statements and omissions that these statements and omissions were material to Plaintiffs.

63. Plaintiffs reasonably relied upon Defendant's statements in deciding to invest their funds with Defendant and the Leverage Group.

64. As a result of Defendant's fraudulent conduct, Plaintiffs have

sustained substantial damages and have suffered imminent and irreparable harm.

COUNT IV

65 Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

66. In the aforesaid contracts and in numerous oral statements, Defendant agreed that the funds invested by Plaintiffs would be held in segregated accounts for each Plaintiff's benefit.

67. Without the consent of any of the Plaintiffs, Defendant unlawfully converted for his own benefit the Plaintiffs' property consisting of cash and securities.

68. Plaintiffs have demanded the return of their unlawfully converted property but Defendant has failed and/or refused to return it.

69. As a result of the conversion, Plaintiffs have sustained substantial damages and have suffered imminent and irreparable harm.

COUNT V

70. Plaintiffs repeat and reallege the allegations set forth in the preceding Paragraphs as if fully set forth at length herein.

71. At all times mentioned herein, Defendant owed Plaintiffs a duty to provide correct and accurate information.

72. The Defendant provided the following incorrect information and/or

misrepresentations to Plaintiffs:

    a.    That defendant was an investment advisor with a successful track record in managing investments for individuals through the Leverage Group and other private funds that he managed;

    b.    That defendant engaged in covered call writing where investors' principal could never be lost;

    c.    That the firm's successful track record dated back to approximately 1977;

    d.    That the firm had one of the best performance records in the investment management business;

    e.    That the Leverage Group had 350 investors, none of which had ever lost any money;

    f.    That the Leverage Group had consistently earned annual returns not lower than 12.55% and as high as 20.00%;

    g.    That investment in the Leverage Group involved minimal or no and would be "safe";

    h.    That plaintiffs' money would be maintained in a segregated account for each investor;

    i.    That plaintiffs would receive quarterly statements evidencing the change in their accounts over the quarter; and

    j.    That as investors in the Leverage Group plaintiffs would be

able to liquidate their accounts upon request.

73. The Defendant knew or should have known that information it was providing to Plaintiffs was incorrect.

74. Plaintiffs reasonably relied upon the incorrect representations to their detriment when making investment decisions with Defendant.

75. As a result of the negligent representations, Plaintiffs have sustained substantial damages and have suffered imminent and irreparable harm.

COUNT VI

76. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

77. By holding himself out as a securities broker, Defendant owed Plaintiffs a fiduciary duty to treat them with the utmost good faith and diligence.

78. Defendant breached his fiduciary duty to Plaintiffs inter alia by making the aforesaid material misrepresentations and/or material omissions of fact and by failing to pay Plaintiffs the funds due and owing to them upon due demand.

79. As a result of the breach of fiduciary duty, Plaintiffs have sustained substantial damages.

COUNT VII

80. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

81. At all times mentioned herein, Defendant had a confidential or fiduciary relationship with Plaintiffs.

82. Defendants agreed to hold Plaintiffs' investments in segregated accounts; to pay a guaranteed annual yield, and to return the full amount of the funds held in their accounts upon due demand.

83. Plaintiffs invested monies with Defendant and/or the Leverage Group in reliance upon those promises.

84. Defendant has been unjustly enriched, and Plaintiffs damaged, by obtaining the foregoing investment deposits, by using Plaintiffs' monies for his own benefit, and earning profit thereon.

85. As a result of Defendant's unjust enrichment, Plaintiffs have sustained substantial damages.

WHEREFORE, Plaintiffs demand judgment against Defendant for the amount of funds and value of assets misappropriated by Defendant; and excepting the Plaintiffs' claims against the Defendant from discharge in bankruptcy, together with attorney's fees, costs and other such and further relief as to the Court may deem just and proper.

Dated: Nanuet, New York
       May 22, 2009

        Respectfully submitted,

Schoeps & Specht
Attorneys for Plaintiffs
334 S. Middletown Road
Nanuet, New York 10954
(845) 624-1041

By: __s/Michael B. Specht_________
MICHAEL B. SPECHT (MS 2475)

POLUHA , et. al.

-against-

PHILIP BARRY,

Debtor/Defendant

---

COMPLAINT

---

SCHOEPS & SPECHT
Attorneys-at-Law

*Attorneys for*

Law Office of Schoeps & Specht
334 S. Middletown Road
Nanuet, NY 10954
(845) 624-1041

---

To

Attorney(s) for

---

Service of a copy of the within is hereby admitted.

Dated,

Attorney(s) for

---

Sir:—Please take notice

☐ NOTICE OF ENTRY

that the within is a *(certified)* true copy of a
duly entered in the office of the clerk of the within named court on 20

☐ NOTICE OF SETTLEMENT

that an order of which the within is a true copy will be presented for settlement to the HON. one of the judges of the within named court, at
on 20 at M.

Dated,

Yours, etc.
SCHOEPS & SPECHT
Attorneys-at-Law

To

*Attorneys for*

Attorney(s) for

Law Office of Schoeps & Specht
334 S. Middletown Road
Nanuet, NY 10954