B104 (Form 104) (08/07)

# ADVERSARY PROCEEDING COVER SHEET
(Instructions on Reverse)

**ADVERSARY PROCEEDING NO.**

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Jack Messina | Philip Barry a/k/a Barry Publications |

| ATTORNEY(S) (Firm Name, Address, Telephone No.) | ATTORNEY(S) (If Known) |
|---|---|
| Schoeps & Specht<br>334 S. Middletown Road<br>Nanuet, New York 10954<br>(845) 624-1041 | |

**PARTY** (Check One Box Only)
- [ ] Debtor
- [x] Creditor
- [ ] U.S. Trustee
- [ ] Trustee
- [ ] Other

**PARTY** (Check One Box Only)
- [x] Debtor
- [ ] Creditor
- [ ] U.S. Trustee
- [ ] Trustee
- [ ] Other

**CAUSE OF ACTION** (Write a brief statement of cause of action, including all U.S. statutes involved.)

For damages and exception from discharge due to fraud and fraudulent conversion, in violation of Sections 3(a)(1) and 10(b) of the Securities Exchange Act, 13 U.S.C. 78c(a)(10), 78j(b), and S.E.C. Rule 10b-5.

## NATURE OF SUIT
(Number up to 5 boxes with the lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- [ ] 11 – Recovery of money/property - § 542 turnover of property
- [ ] 12 – Recovery of money/property - § 547 preference
- [ ] 13 – Recovery of money/property - § 548 fraudulent transfer
- [ ] 14 – Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- [ ] 21 – Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- [ ] 31 – Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- [ ] 41 – Objection/revocation of discharge - § 727(c), (d), (e)

**FRBP 7001(5) – Revocation of Confirmation**
- [ ] 51 – Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- [ ] 66 – Dischargeability - § 523(a)(1), (14), (14A) priority tax claims
- [x] 62 – Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
- [x] 67 – Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- [ ] 61 – Dischargeability - § 523(a)(5), domestic support
- [ ] 68 – Dischargeability - § 523(a)(6), willful and malicious injury
- [ ] 63 – Dischargeability - § 523(a)(8), student loan
- [ ] 64 – Dischargeability - § 523 (a)(15), divorce or separation obligation (other than domestic support)
- [x] 65 – Dischargeability – other

**FRBP 7001(7) – Injunctive Relief**
- [ ] 71 – Injunctive relief – imposition of stay
- [ ] 72 – Injunctive relief – other

**FRBP 7001(8) – Subordination of Claim or Interest**
- [ ] 81- Subordination of claim or interest

**FRBP 7001(9) – Declaratory Judgment**
- [ ] 91 – Declaratory judgment

**FRBP 7001(10) – Determination of Removed Action**
- [ ] 01 – Determination of removed claim or cause

**Other**
- [ ] SS-SIPA Case – 15 U.S.C. §§ 78aaa et seq.
- [ ] 02 – Other (e.g.,other actions that would have been brought in state court if unrelated to bankruptcy case)

- [x] Check if this case involves a substantive issue of state law
- [ ] Check if this is asserted to be a class action under FRCP 23
- [ ] Check if a jury trial is demanded in complaint

Demand: $ $658,000.00

Other Relief Sought:

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | BANKRUPTCY CASE NO. | | |
|---|---|---|---|
| Philip Barry a/k/a Barry Publications | 08-47352 (dem) | | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | | NAME OF JUDGE |
| Eastern District New York | Brooklyn | | Hon. Dennis E. Milton |

### RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
|  |  |  |
| DISTRICT IN WHICH ADVERSARY PROCEEDING IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
|  |  |  |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|
| *[signature]* | |
| DATE  6/03/09 | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet. When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JACK MESSINA,

                                                           Chapter 11

                     Plaintiff,                 Case No. 08-47352 (dem)

-against-

PHILIP G. BARRY a/k/a
BARRY PUBLICATIONS,                        Adversary No.


                     Defendant.
------------------------------------------------------------X

COMPLAINT TO DETERMIMNE DISCHARGEABILITY OF DEBT PURSUANT
TO
11 U.S.C. SECTION 523

Plaintiff, by way of Complaint against Defendant, the Debtor, Philip G. Barry, by his attorneys, Schoeps & Specht, alleges as follows:

### JURISIDICTION AND VENUE

1.     On October 31, 2008, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of New York, under Case No. 08-47352.

2.     This Court has jurisdiction of this adversary proceeding pursuant to 28 US.C. 1334, and 11 U.S.C. 523 and 105(a). This adversary proceeding is a core proceeding under 28 U.S.C. 157(2)(I).

3.     Venue of this adversary proceeding in this judicial district is

appropriate pursuant to 28 U.Sc.3 1409(a), as this proceeding arises from debtor's Chapter 11 case presently venued in this district.

## PARTIES

4. Defendant Philip G. Barry is, upon information, a resident of the State of New York, residing in Brooklyn, New York.

5. The plaintiff is a resident of the State of California, who invested money with defendant Barry and/or his company, the Leverage Group.

## FACTUAL BACKGROUND

6. In July, 2005,, plaintiff was referred to defendant to invest his money with him and his company, the Leverage Group.

7. In July, 2005, plaintiff opened an account (Account 7-121-05) with the Leverage Group by making an initial deposit of $50,000.00.

8. Shortly thereafter, plaintiff received from defendant a statement dated July 12, 2005, acknowledging receipt of the $50,000.00 investment and indicating that this account was guaranteed to earn a minimum 12.55% interest for the remainder of the calendar year.

9. On or about October 19, 2005, plaintiff made an additional $50,000.00 deposit to this account.

10. On or about January 19, 2006, plaintiff made a further deposit of $300,000.00 to the account.

11. On or about February 22, 2006, plaintiff made a further deposit of

$100,000.00 to this account.

12.     Plaintiff subsequently made additional deposits to this account, for a total amount in excess of $600,000.00.

13.     Plaintiff received quarterly statements from defendant through September, 2008.

14.     The last statement received from defendant by plaintiff for this account was dated September 30, 2008, and indicated a closing balance of $657,359.25.

15.     Subsequently, plaintiff requested that defendant close his account and remit to him the balance.

16.     To date, none of the invested funds have ever been returned to plaintiff.

17.     On or about February 20, 2009, plaintiff received a letter from defendant, addressed to "Leverage Group Client", in which defendant stated that the only assets held by or for the benefit of the Leverage Group's investors consisted of various real estate holdings; that as a result of the filing of multiple actions against defendant in the United States District Court, Eastern District of New York, these assets were attached or otherwise "frozen"' that no other assets existed; and that the real estate holdings were not likely to generate the liquidity needed to return the balances reflected in the account statements.

## COUNT I

18.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

19.  The options in which defendant traded or purported to trade on plaintiffs' behalf are a "security" or "securities" within the meaning of Sections 3(a)(10) and 10(b) of the Securities Exchange Act, 15 U.S.C. Section 78c(a)(10), 78j(b), and S.E.C. Rule 10b-5.

20.  Defendant, and the Leverage Group and related entities, directly and indirectly, singly and in concert, knowingly or recklessly, by the use of the means and instrumentality of interstate commerce or of the mails, in the offer or sale, and in connection with the purchase or sale, of securities, have inter alia (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of, or otherwise made untrue statements of material fact, or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts, practices, and courses of business which operated as fraud or deceit upon purchasers of securities.

21.  In furtherance of this conduct, defendant has made numerous misrepresentations, including but not limited to the following:

   a.  That defendant was an investment advisor with a successful track record in managing investments for individuals through the Leverage Group and other private funds that he managed;

   b.  That defendant engaged in covered call writing where investors' principal could never be lost;

c.  That the firm's successful track record dated back to approximately 1977;

d.  That the firm had one of the best performance records in the investment management business;

e.  That the Leverage Group had 350 investors, none of which had ever lost any money;

f.  That the Leverage Group had consistently earned annual returns not lower than 12.55% and as high as 20.00%;

g.  That investment in the Leverage Group involved minimal or no and would be "safe";

h.  That plaintiffs' money would be maintained in a segregated account for each investor;

i.  That plaintiffs would receive quarterly statements evidencing the change in their accounts over the quarter; and

j.  That as investors in the Leverage Group plaintiffs would be able to liquidate their accounts upon request.

22.  These representations were material, and defendant knew or should have known that the material representations were false and misleading.

23.  By reasons of these acts, omissions, practices and courses of business set forth in this Complaint, defendant and the related entities have violated the securities laws of the United States, including but not limited to, Sections 3(a)(1) and

10(b) of the Securities Exchange Act, 13 U.S.C. 78c(a)(10), 78j(b), and S.E.C. Rule 10b-5.

24. Plaintiff reasonably relied upon defendants' misrepresentations regarding the Leverage Group in deciding to invest his funds.

25. As a result of the foregoing, defendant sustained substantial damages in the amount of $657,329.25 and has been irreparably harmed thereby.

## COUNT II

26. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth at length herein.

27. Defendant offered to invest plaintiff's savings, generate interest at a rate of 12.55% per year, and thereafter, provide quarterly statements to plaintiff. Based upon the quarterly statements, plaintiff would be able to ascertain the balance on his investments at the end of every quarter, and would be entitled to withdraw his money at any time. Plaintiff invested substantial portions of his savings with the Leverage Group, anticipating that such investments would provide him with future income.

28. Plaintiff performed under the contract by investing his money.

29. Defendant has breached the contract by, inter alia, failing and/or refusing to return the principal investments and not paying the interest that was promised. In addition, plaintiff has not received a quarterly statement since September, 2008 for his. Plaintiff's requests to withdraw his funds were refused.

30. As a result of the breach of contract, plaintiff has and will continue to sustain substantial damages and will continue to be imminently and irreparably harmed.

## COUNT III

31. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

32. Defendant made numerous false and misleading statements upon which the Defendant expected Plaintiff to rely, including, but not limited to the following:

   a. That defendant was an investment advisor with a successful track record in managing investments for individuals through the Leverage Group and other private funds that he managed;

   b. That defendant engaged in covered call writing where investors' principal could never be lost;

   c. That the firm's successful track record dated back to approximately 1977;

   d. That the firm had one of the best performance records in the investment management business;

   e. That the Leverage Group had 350 investors, none of which had ever lost any money;

   f. That the Leverage Group had consistently earned annual returns

not lower than 12.55% and as high as 20.00%;

g. That investment in the Leverage Group involved minimal or no and would be "safe";

h. That plaintiff's money would be maintained in a segregated account for each investor;

i. That plaintiff would receive quarterly statements evidencing the change in his account over the quarter; and

j. That as an investor in the Leverage Group plaintiff would be able to liquidate his accounts upon request.

33. Additionally, upon information and belief, Defendant fraudulently converted Plaintiff's funds and used them to purchase real property throughout the State of New York.

34. Defendant acted with the intention to deceive and mislead the Plaintiffs, to fraudulently induce him to invest in the Leverage entities, and to fraudulently misappropriate and obtain control over the funds that Plaintiff invested with Defendant.

35. Defendant knew at the time he made these false, deceptive and misleading statements and omissions that these statements and omissions were material to Plaintiff.

36. Plaintiff reasonably relied upon Defendant's statements in deciding to invest his funds with Defendant and the Leverage Group.

a. That defendant was an investment advisor with a successful track record in managing investments for individuals through the Leverage Group and other private funds that he managed;

b. That defendant engaged in covered call writing where investors' principal could never be lost;

c. That the firm's successful track record dated back to approximately 1977;

d. That the firm had one of the best performance records in the investment management business;

e. That the Leverage Group had 350 investors, none of which had ever lost any money;

f. That the Leverage Group had consistently earned annual returns not lower than 12.55% and as high as 20.00%;

g. That investment in the Leverage Group involved minimal or no and would be "safe";

h. That plaintiff's money would be maintained in a segregated account for each investor;

i. That plaintiff would receive quarterly statements evidencing the change in his accounts over the quarter; and

j. That as investors in the Leverage Group plaintiff would be able to liquidate his accounts upon request.

37. As a result of Defendant's fraudulent conduct, Plaintiff has sustained substantial damages and has suffered imminent and irreparable harm.

## COUNT IV

38  Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

39. In the aforesaid contracts and in numerous oral statements, Defendant agreed that the funds invested by Plaintiff would be held in segregated accounts for each Plaintiff's benefit.

40. Without the consent of the Plaintiff, Defendant unlawfully converted for his own benefit the Plaintiff's property consisting of cash and securities.

41. Plaintiff has demanded the return of hs unlawfully converted property but Defendant has failed and/or refused to return it.

42. As a result of the conversion, Plaintiff has sustained substantial damages and has suffered imminent and irreparable harm.

## COUNT V

43. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

44. At all times mentioned herein, Defendant owed Plaintiff a duty to provide correct and accurate information.

43. The Defendant provided the following incorrect information and/or misrepresentations to Plaintiff:

44. The Defendant knew or should have known that information it was providing to Plaintiff was incorrect.

45. Plaintiff reasonably relied upon the incorrect representations to his detriment when making investment decisions with Defendant.

46. As a result of the negligent representations, Plaintiff has sustained substantial damages and has suffered imminent and irreparable harm.

## COUNT VI

47. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

48. By holding himself out as a securities broker, Defendant owed Plaintiff a fiduciary duty to treat him with the utmost good faith and diligence.

49. Defendant breached his fiduciary duty to Plaintiff inter alia by making the aforesaid material misrepresentations and/or material omissions of fact and by failing to pay Plaintiff the funds due and owing to him upon due demand.

50. As a result of the breach of fiduciary duty, Plaintiff has sustained substantial damages.

## COUNT VII

51. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth at length herein.

52. At all times mentioned herein, Defendant had a confidential or fiduciary relationship with Plaintiff.

53. Defendants agreed to hold Plaintiff's investments in segregated accounts; to pay a guaranteed annual yield, and to return the full amount of the funds held in his accounts upon due demand.

54. Plaintiff invested monies with Defendant and/or the Leverage Group in reliance upon those promises.

55. Defendant has been unjustly enriched, and Plaintiff damaged, by obtaining the foregoing investment deposits, by using Plaintiff's monies for his own benefit, and earning profit thereon.

56. As a result of Defendant's unjust enrichment, Plaintiff has sustained substantial damages.

WHEREFORE, Plaintiff demand judgment against Defendant for the amount of funds and value of assets misappropriated by Defendant; and excepting the Plaintiff's claims against the Defendant from discharge in bankruptcy, together with attorney's fees, costs and other such and further relief as to the Court may deem just and proper.

Dated: Nanuet, New York
       June 9, 2009

Respectfully submitted,

Schoeps & Specht
Attorneys for Plaintiffs
334 S. Middletown Road
Nanuet, New York 10954
(845) 624-1041


By:     _s/Michael B. Specht_____
        MICHAEL B. SPECHT  (MS 2475)

JACK MESSINA,

-against-

PHILIP BARRY,

Debtor/Defendant

COMPLAINT

**SCHOEPS & SPECHT**
Attorneys-at-Law

*Attorneys for*

Law Office of Schoeps & Specht
334 S. Middletown Road
Nanuet, NY 10954
(845) 624-1041

To

Attorney(s) for

Service of a copy of the within                                                                                                  is hereby admitted.

Dated,

                                                                                                                Attorney(s) for

Sir:—Please take notice
☐ **NOTICE OF ENTRY**
that the within is a *(certified)* true copy of a
duly entered in the office of the clerk of the within named court on                                        20
☐ **NOTICE OF SETTLEMENT**
that an order                                      , of which the within is a true copy will be presented for
settlement to the HON.                                                                              one of the judges
of the within named court, at
on                          20     at              M.

Dated,
                                                                                    Yours, etc.
                                                                            **SCHOEPS & SPECHT**
                                                                                Attorneys-at-Law

To
                                                    *Attorneys for*
Attorney(s) for
                                                    Law Office of Schoeps & Specht
                                                    334 S. Middletown Road
                                                    Nanuet, NY 10954